**BAILEY etc., Plaintiffs, v. HUFF, Defendant.**

Common Pleas Court, Franklin County.

No. 187797. Decided July 7, 1956.

George E. Tyack, Howard F. Wehr, for plaintiffs.
Gingher & Christensen, for defendant.

## OPINION

By LEACH, J.

At the close of the evidence on behalf of the plaintiff, the Court, on motion by the defendant, directed a verdict in favor of the defendant on the ground that the evidence on behalf of the plaintiff, even when construed most favorably to the plaintiff, did not support a submission to the jury on the question of whether plaintiff's injuries were "caused by the wilful or wanton misconduct" of the defendant, within the purview of the "guest statute," §6308-6 GC. This case is now before the Court on plaintiff's motion for new trial, the sole issue being whether this Court erred in so directing a verdict.

The evidence was undisputed that plaintiff sustained personal injuries on December 9, 1952, when the automobile in which she was a guest and being driven by the defendant was involved in a collision with another car at the intersection of U. S. Route 40, West of Columbus, and Wilson Road; that defendant had been proceeding eastwardly on Route 40 and was in the process of making a left hand turn into Wilson Road while the other vehicle was proceeding through the intersection in a westwardly direction.

The brief of the plaintiff, filed in support of her motion, does not contend that defendant was guilty of "wilful misconduct," as that term has been defined by the Supreme Court in **Tighe v. Diamond, 149 Oh St 520,** but in effect contends that reasonable minds might at least differ on the question of whether defendant was guilty of "wanton misconduct."

Wanton misconduct is defined in the first paragraph of the syllabus of **Helleren, Admx. v. Dixon, 152 Oh St 40,** as follows:

"1. Within the meaning of §6308-6 GC, wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (**Universal Concrete Pipe Co. v. Bassett, 130 Oh St 567,** approved and followed.)"

Wanton misconduct is not merely a high degree of negligence. The difference between wanton misconduct and negligence is one of kind and not merely of degree. **Universal Concrete Pipe Co. v. Bassett, 130 Oh St 567;** Akers v. Stirn, 136 Oh St 245.

It will be noted that wanton misconduct requires proof not only of such conduct as manifests a disposition to perversity but also that such conduct was under such conditions that the party must be **conscious,** from **his knowledge** of the surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury A disposition to perversity, standing alone, is not sufficient to establish

wanton misconduct. **Miljak v. Boyle, 93 Oh Ap 169.** (Motion to certify overruled.) Furthermore, the perversity of conduct must be the proximate cause of the injuries. **Ulrich v. Massie, 89 Oh Ap 362; Fessel v. Schwartz, 94 Oh Ap 201.** (Motion to certify overruled.) In such action the guest must plead unequivocally that the operator had knowledge of existing conditions. **Vecchio v. Vecchio, 131 Oh St 59.** Obviously therefore, the guest must prove unequivocally that the operator had knowledge of the existing conditions which resulted in the collision and the injuries to the guest.

Let us now apply these basic principles to the issues in this case as made up by the pleadings and to the proof adduced on behalf of the plaintiff. The petition alleged that plaintiff's injuries were "directly caused by the wilful act and wanton negligence" of the defendant in five respects. As was true of the petition in the Vecchio case, we find here a misuse of terms as there is no such thing as "wanton negligence" but as there stated at pages 64 and 65, we would not permit the misuse of the term to nullify it.

The first claim of the petition is "In wilfully and wantonly directing his automobile across State Route 40 at a speed greater than he could control, and without first ascertaining the traffic conditions on said highway."

The first portion of this charge implies a loss of control of defendant's car. There was evidence by the testimony of the plaintiff that defendant was driving at a speed of approximately 35 to 40 miles per hour approaching Wilson Road (the prima facie lawful speed being 50 miles per hour); that defendant pulled into the separate left hand turn lane and proceeded to turn left without slowing up. There was absolutely no evidence, however, that defendant at any time lost control of his autmobile, that it skidded around the corner, that it swayed, wobbled, tipped or did anything else indicating any loss of control.

The second portion of this charge is simply to the effect that defendant should have seen and yielded the right of way to the car going west on Route 40. In effect, this is merely a claim that defendant ought to have known of the presence of the west-bound vehicle, this, therefore, being only a claim of negligence.

The second claim is: "In wilfully and wantonly driving while intoxicated." There was evidence by the testimony of the defendant that he had consumed several beers, and evidence by the testimony of a deputy sheriff, who arrived after the accident, and by a police chemist based on a urinalysis that defendant was under the influence of alcohol. There was no testimony by the plaintiff as to defendant's condition with relation to intoxication.

In our opinion, the fact that defendant was intoxicated does not satisfy the requirement of law that plaintiff prove that defendant was conscious, from his own knowledge, that his conduct will in all common probability result in injury. While the case of **Kirk v. Birkenbach, 22 Abs 569,** might be construed as so holding, it will be noted that this case relied upon the definitions of "wilful negligence" as employed in **Higbee Co. v. Jackson, 101 Oh St 75,** and **Reserve Trucking Co. v. Fairchild, 128**

Oh St 519, although the term "wilful negligence" had been rejected as a misnomer and the holdings of these two cases modified by the Universal Concrete Pipe Co. supra, some ten months before, and no reference was made to that case. Nor was reference made either to Vecchio v. Vecchio, supra, decided some nine months before. Contrast **Oliver v. Holcomb, 22 Abs 277,** holding that intoxication was not sufficient to constitute wanton misconduct and relying on the Universal Concrete Pipe Co. case and Vecchio v. Vecchio, decided shortly before that time. We agree with the reasoning of the Oliver case.

The third claim is: "In wilfully and wantonly allowing this plaintiff to enter his automobile knowing himself to be intoxicated." While, as noted before, there was evidence of intoxication, there was absolutely no evidence adduced showing or even indicating that defendant knew that he was intoxicated or that he knew that he was an unsafe driver as a result thereof. To the contrary, the testimony of the police chemist, a witness for the plaintiff, was to the effect that persons with an alcoholic content in the urine of the percentage found in the defendant would honestly believe that they were normal and perfectly capable of driving, although actually their normal facilities would be impaired. While there was evidence of protests by the plaintiff and a request that she be let out of the car, and testimony by the plaintiff that defendant's wife asked to drive the car, it is noted that these protests were directed at the speed of 35 to 40 miles per hour and as noted before, there was no testimony by plaintiff regarding any intoxicated condition of the defendant. So far as the evidence shows, no one advised defendant at any time that he appeared intoxicated or incapable of safely operating his car for such reason.

The fourth claim is: "In wilfully and wantonly failing to inform this plaintiff that he was intoxicated before she entered his automobile." This claim presupposes that defendant at such time knew that he was intoxicated, and what we have stated under the third claim is especially applicable here.

The fifth and last claim is: "In directing his automobile into the path of an oncoming car which he saw, or, but for his wanton disregard for the safety of this plaintiff, should have seen." Here, in the language of Judge Stephenson in the Vecchio case is the "nucleus about which the case is constructed." The injuries in this case were caused by the collision of the two cars at the intersection. Remove the westbound car and the injuries would not have resulted. Thus the presence of the other car is the essential factor of the "surrounding circumstances and existing conditions" which establishes that the conduct of the defendant, at the time and place in question would "in all common probability result in injury." To bring the case within the scope of the holding of the Supreme Court, therefore, plaintiff must plead, and obviously prove, that defendant had **knowledge** of such existing condition. This she has failed to do.

In the first place the allegation that defendant saw, **or should have seen,** the oncoming car, is subject to the same infirmity as the petition in the Vecchio case in that it does not allege **unequivocally** that defend-

ant had knowledge of such existing condition. The language "but for his wanton disregard" etc., adds nothing since "wanton disregard" itself must include actual knowledge.

In the second place, as we stated at the time we directed the verdict for the defendant, there was no evidence (1) that defendant saw the oncoming car prior to entering the westbound lanes of Route 40, or (2) that defendant, in effect, drove blindly with no effort to see or pay any attention to any traffic. On cross-examination defendant denied seeing the approaching car. Conceding that such knowledge can be proved by other than admissions by the defendant, there is no such proof. No one in the car advised him of the approach of the other car and so far as the proof went, apparently none of the passengers saw it either. This might be explained by the presence of another car standing with its headlights on in a southwesterly direction preparing to turn south or by a dip in the westbound lanes of Route 40 to the east of the intersection. In any event proof that defendant **should have seen** the oncoming car is obviously not proof that he was conscious, from his knowledge, of the presence of such car, and the basic claim of the plaintiff appears to be that since the accident did happen, defendant should have seen the other car and since he should have seen it, a jury question is presented as to whether he actually did see it. In our opinion, to submit the case to the jury and permit it to conclude that defendant actually saw the oncoming car would be to permit the jury to engage in sheer speculation. Furthermore, it was incumbent on plaintiff to show not only that defendant had knowledge of the danger created by the presence of the oncoming car but also that such knowledge was timely. **Jenkins v. Sharp, 140 Oh St 80 at 83.**

In Helleren v. Dixon, supra, recovery was denied in a case where the driver could not see ahead and stated that "I just took a chance on nothing happening," Judge Taft concluding that "There is a wide gap between chance and probability." It is somewhat difficult to reconcile this conclusion with the Jenkins case, supra, because there also the defendant took a chance on nothing happening as he drove through a stop sign, which he had seen, at a speed of 35 to 50 miles per hour at a blind intersection. We cannot extend the holding of the Jenkins case to cover the fact pattern here, however, since (1) the Helleren case was decided after the Jenkins case and afterward approved in **Birmelin v. Gist, 162 Oh St 98, at 110** and, (2) there is in my mind a clear distinction between driving through a blind intersection in violation of right of way and merely failing to yield the right of way. In the former any effective looking is impossible. In the latter a more careful looking would disclose the presence of danger but we cannot assume merely from the collision that there was a perverse refusal to make any attempt to look at all. If such assumption could be made, any failure to yield the right of way would constitute not only negligence, but also wanton misconduct since most, if not all, failing to yield involve an inadequate or careless lookout by the offending motorist.

For the reasons herein stated, together with the reasoning which we stated at the time of the direction of the verdict, the motion for new

trial is overruled. Entry may be prepared accordingly reserving exceptions to the plaintiff.