MROZ ᴇᴛ ᴀʟ. *v.* VASOLD, JR.

[No. 189, September Term, 1961.]

82

*Decided March 15, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Joel H. Pachino,* with whom were *Irvin S. Friedman* and *George D. Edwards* on the brief, for appellants.

*Michael P. Crocker* and *R. Taylor McLean,* with whom were *Kenneth C. Proctor* and *Piper & Marbury* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

When the trial judge in the Circuit Court for Baltimore County granted the appellee's motion for a judgment *n.o.v.* after a jury had rendered a verdict in favor of the appellants, they appealed. The only question involved is whether appellants offered sufficient evidence, in view of the Ohio "guest-passenger statute," to require a submission of their case to the jury.

The appellee and the appellant, Richard P. Mroz (Mroz), neighbors in Baltimore County and college schoolmates, were visiting in the State of Ohio. In the middle of a clear July day in 1959, they set out, by automobile, for Cleveland to see a baseball game, accompanied by a young lady, Marjorie Rob-

inson. The appellee was driving; the young lady was to his right and Mroz to her right; all on the front seat. They approached Ohio Route 241, a north-south through street, from the east on Canal Fulton Road, and proceeded into the intersection of said streets, where the automobile in which they were riding was struck by a south bound motor vehicle on the through street. It is conceded that Mroz was a non-paying guest; that a red blinking light faced appellee as he approached the intersection; and that a stop sign was located on the north side of Canal Fulton Road, about 10 feet from Route 241. Pictures offered as exhibits show that an operator on Canal Fulton Road does not have a full view to his right on Route 241 until he is very close to the intersection, but it cannot be said that the pictures clearly show that the view to the right is completely obstructed.

The three occupants of the car were the only witnesses at the trial below — Mroz and the appellee being called by the appellants; Miss Robinson by the appellee. Summarized and stated most favorably for the appellants, their testimony was to the following effect. Mroz stated that at some time during the ride he believed he said something to the appellee about his speeding; appellee "seemed" to be in a hurry; when they approached Route 241, Mroz drew appellee's attention to the Castaway House, which was located a short distance to their left facing Route 241; when they reached the stop sign, the appellee "slowed down," and "he came to it [the intersection] very slow, and then he put it in second gear and proceeded across" (in a statement made shortly after the accident, Mroz said he did not remember whether they slowed down or not, and appellants argue this statement should aid them in taking their case to the jury); he saw appellee look to his left, but he didn't know whether appellee looked to the right or not; when they were proceeding across Route 241, he heard a screeching which drew his attention and he saw, for the first time, a car some 25 to 30 feet away, approaching from his right at a high rate of speed; and very shortly thereafter the vehicles collided. He also stated the appellee told him, shortly after the accident, that appellee "didn't even see the car coming."

The appellee, called by the appellants, was unable to spread much light on what occurred just before the collision, in which he received a rather severe "bump" on his head. When he was 50 to 100 feet from the intersection, traveling at about 35 to 40 miles per hour, he remembered that he said something to Mroz about the Castaway House, and he could not recall anything that transpired thereafter until he was walking around his car after the accident. He didn't remember whether he saw the stop sign, but thought he saw the blinking light; he believed he slowed down before reaching the intersection, but did not remember whether he did or not; and he saw the intersection, but did not see the other vehicle until after the impact. The testimony of Miss Robinson afforded no additional impetus to appellants' case.

The appellants argue that the above evidence, viewed in a light most favorable to them, and the legitimate inferences deducible therefrom entitled them to have the jury pass upon their case, in spite of the Ohio guest statute. This statute (General Code, § 6308-6) is set forth in Page's Ohio Rev. Code Ann., Title 45, § 4515.02, and, in pertinent part, states:

> "The * * * person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to * * * a [non-paying] guest, * * * resulting from the operation [of said motor vehicle], * * * unless such injuries * * * are caused by the wilful or wanton misconduct of such operator * * *."

See also General Code, § 6296-10 for minor automobile operators responsibility statute.

It is obvious that the critical words in the above statute are "wilful or wanton misconduct," with "wilful or wanton" stated disjunctively. Although the case below was tried upon the issue of whether the appellee had been guilty of "wilful or wanton misconduct," the appellants, in their brief and oral argument, abandon all claim of "wanton misconduct" on the part of the appellee, but assert that the evidence brings his actions within the scope of "wilful misconduct," as defined by the Supreme Court of Ohio. It may well be, that in adopting this course, appellants assumed a heavier burden than if they had

let the issue of "wilful or wanton misconduct" stand. See *Bailey v. Huff*, 152 N. E. 2d 162 (Ohio 1956), wherein the Court stated that the appellant's brief did not contend that the defendant below had been guilty of "wilful misconduct," but claimed that reasonable minds might, at least, differ on the question of whether defendant was guilty of "wanton misconduct." And in the late case of *Billings v. Carroll*, 168 N. E. 2d 310 (Ohio 1960), on an issue of "wanton or wilful misconduct" under the statute, the Court set out, in detail, the definitions of both "wanton misconduct" and "wilful misconduct," then proceeded, without further discussion of "wilful misconduct," to hold that the evidence presented a jury question as to "wanton misconduct," to reverse the judgment below, and to remand the cause for further proceedings. See also *Tighe v. Diamond*, 80 N. E. 2d 122 (Ohio), where the Court stated: " 'Wilful misconduct' imports a more positive mental condition prompting an act than does the term 'wanton misconduct.' 'Wilful misconduct' implies an intentional deviation from a clear duty or from a definite rule of conduct * * *." But be that as it may, we shall analyze and consider the evidence to see whether the issue of appellee's "wilful misconduct" should have been submitted to the jury.

It will not be necessary for us to formulate an original definition of wilful misconduct as used in the Ohio statute, for the Supreme Court of that State has done so. In a very pleasingly styled opinion in *Universal Concrete Pipe Co. v. Bassett*, 200 N. E. 843 (Ohio), Judge Stephenson pointed out that, at least, in Ohio "there is no such thing as wilful negligence, and there is no such thing as wanton negligence," stating that an action based upon wilful or wanton misconduct is apart from one based on negligent conduct, the difference being one of kind, not merely of degree. He further stated that negligence is not founded upon either wilfulness or wantonness, and misconduct which is merely negligent is never wilful or wanton. In *Billings v. Carroll, supra,* the Court repeated the oft-quoted (in Ohio) definition of "wilful misconduct" under the guest statute. In relevant part, it follows:

" 'Wilful misconduct' * * * is either the doing of an act with specific intent to injure his passenger or

> with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct."

The above quotation was taken by the Ohio Court from the first case of *Tighe v. Diamond*, 80 N. E. 2d 122 (Ohio). In the second *Tighe* case, 82 N. E. 2d 99 (Ohio), the Court explained the definition, stating that wilful misconduct may be either actual, where there is intent to injure, or constructive, where the act causing the injury is intentional, but there is no voluntary intent to cause injury. In order to constitute this type of wilful misconduct, the execution of the wrongful intentional act must be accompanied by indifference to the safety of others after knowledge of their danger, or failure, after such knowledge, to use ordinary care to avoid injury to such others. The presence of these latter elements, coupled with the intentional act, furnishes the constructive intent to injure.

There is no contention in the instant case that the appellee had a "specific intent" to injure Mroz; hence, it is apparent that if the appellee's alleged wrongful course of conduct is to be brought within the scope of the guest statute, it is incumbent upon the appellants to show that appellee's alleged wrongful course of conduct was carried out "with full knowledge of existing conditions," or he, at least executed some wrongful intentional act, accompanied by indifference to the safety of others *after knowledge* of their danger, or failure, *after such knowledge,* to use ordinary care to avoid injury to others.

Unfortunately for the appellants' case, there is not a particle of evidence to show that the appellee saw the automobile approaching from his right until after the collision. On the contrary, the testimony discloses that neither the appellee nor

Miss Robinson saw the automobile until after the accident, and Mroz did not see it until it was within 25 to 30 feet from him. Nor was there a scintilla of evidence to the effect that the appellee performed any wrongful intentional act after his knowledge of Mroz's peril (in fact the testimony shows that it was not until after the collision that the appellee knew of *any* danger), or that after such knowledge, he failed to use ordinary care to avert injury to Mroz.

*Bailey v. Huff, supra,* involved a question of alleged "wanton misconduct" under the guest statute. The evidence showed the plaintiff sustained personal injuries when the automobile, driven by the defendant and in which she was a guest, had a collision at an intersection. The defendant, who was intoxicated, had been proceeding eastwardly and was in the process of making a left turn without yielding the right of way, while the other vehicle was proceeding through the intersection in a westwardly direction. The court pointed out that wanton misconduct is not merely a high degree of negligence. It requires proof, among other things, that the defendant's wrongful conduct was carried out under such conditions that he must have been conscious, "from *his knowledge* of the surrounding circumstances and existing conditions," that his conduct would in all common probability result in injury. The court then stated that there was no testimony to show that defendant knew he was intoxicated or that he knew he was an unsafe driver as a result thereof. Likewise, there was no proof that the defendant knew of the presence of the other car, which was an essential factor of the "surrounding circumstances and existing conditions"; hence a directed verdict in favor of defendant was proper. See also *Vecchio v. Vecchio,* 1 N. E. 2d 624 (Ohio).

We have found no Ohio case, and have been referred to none, that specifically deals with the question of purported "wilful misconduct" for failure to stop at a stop sign. However, the Supreme Court of Iowa, in applying its guest statute requiring "reckless operation" of a motor vehicle for a guest passenger to recover, held that such a failure to stop at a stop sign before proceeding upon an arterial highway was

not sufficient to establish "recklessness" upon the part of defendant's driver, where it was not shown that he knew the car on the arterial highway was being driven at a speed of 35 to 40 miles per hour. *Welch v. Minkel,* 246 N. W. 775 (Iowa). In *Oxenger v. Ward,* 240 N. W. 55 (Mich.), where the defendant drove his automobile onto a lightly traveled "through traffic highway" at a speed of about 20 miles per hour, without stopping in obedience to a stop sign, the Court, in applying a statute that prohibited recovery by a guest passenger except for conduct that amounted to "gross negligence or willful and wanton misconduct," held there was no evidence showing "wanton or willful misconduct" on the part of the defendant, and it also was required to direct a verdict in his favor on the question of "gross negligence." Cf. *Rogers v. Blake,* 240 S. W. 2d 1001 (Sup. Ct. Tex.). However, other courts have held to the contrary. See *Lawson v. Fisk,* 45 N. E. 2d 707 (App. Ct. Ill.) ; *Rickner v. Haller,* 116 N. E. 2d 525 (App. Ct. Ind.). So we do not find these cases very helpful in solving our problem, because we must apply the definition of wilful misconduct as it has been enunciated by the Supreme Court of Ohio.

The evidence, viewed in a light most favorable to the appellants cannot be held to show, under the Ohio law, more than inattention, laxity, heedlessness and oversight upon the part of the appellee. Three friendly young people were on a pleasure trip. The exhibits show the intersection to be in a rural area. Mroz, himself, stated that appellee slowed down at the stop sign, and, when he arrived at the intersection, "he came to it very slow, and then he put it in second gear and proceeded across." Just prior thereto, there had been some conversation relative to the Castaway House located to their left. Appellee's only wrongful acts were his failure to obey the traffic signals and to see the vehicle approaching from his right; conduct which the appellee admits constituted negligence. However, neither of these wrongful acts was performed at a time when the appellee had "full knowledge of existing conditions," nor did such acts show a wrongful course of action, either of commission or omission, "after knowl-

edge" of danger to Mroz. The testimony lacks a showing of a mental state disclosing a conscious realization of wrongful conduct, which is an essential element if one's behaviour is to be labeled "wilful misconduct." We, therefore, conclude, as did the learned trial judge, that the evidence was insufficient to carry the case to the jury in view of the Ohio guest statute. As was said by the Supreme Court of Ohio in *Tighe v. Diamond, supra,* 80 N. E. 2d 122: "As long as the element of inadvertence remains in conduct it is not wilful."

The appellants rely heavily upon the case of *Jenkins v. Sharp,* 42 N. E. 2d 755 (Ohio). In doing so, they attempt to revert to their claim of "wanton" misconduct, for that is the question that was involved there. Not only was the question of "wanton" instead of "wilful" misconduct at issue, but the case is readily distinguishable from the instant one on the facts. In *Jenkins,* the evidence most favorable to the plaintiff established that the defendant failed to stop before entering a busily traveled through highway in a city; without slowing up he entered and was proceeding through the intersection at a speed of 35 to 50 miles per hour; his view along the intersecting boulevard street in both directions was obstructed; an automobile approaching from the opposite direction in which the defendant was traveling had stopped for the stop sign on the opposite corner; and the defendant admitted seeing the stop signals in time to have stopped. The Court stated the evidence, as outlined above, disclosed, "that the defendant went across [the through street] deliberately and at a high rate of speed, disregarding the injunction to stop, although cognizant of it," which entitled the plaintiff to have the issue of "wanton misconduct" submitted to the jury.

Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*