LAURIE ANN HAUCH *v.* ALAN G.
CONNOR ET AL.

[No. 161, September Term, 1981.]

*Decided January 4, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*F. Wainwright Barnes,* with whom was *Edward J. Gorman, Jr.,* on the brief, for appellant.

*Eugene I. Glazer* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

The Maryland Workmen's Compensation Act permits an employee, suffering a compensable injury because of the negligence of a fellow employee, to bring a personal injury action against that co-employee. *Leonard v. Sav-A-Stop Services,* 289 Md. 204, 208, 424 A.2d 336 (1981); *Hutzell v. Boyer,* 252 Md. 227, 232, 249 A.2d 449 (1969). The Delaware Workmen's Compensation Act, however, prohibits such co-employee actions. *Groves v. Marvel,* 59 Del. 73, 213 A.2d 853, 855 (1965). The choice of law question presented in this case is whether Maryland residents, who sustained injuries in an automobile accident in Delaware while temporarily there in furtherance of their employer's business, and who claimed no benefits under the Delaware workmen's compensation law, may maintain in Maryland courts a personal injury action against the co-employee who operated the employer's automobile in which the plaintiffs were passengers.

The plaintiffs, Alan G. Connor and Carolyn McIntire, and the defendant, Laurie Ann Hauch, are residents of the State of Maryland. During the relevant period of time, they all were employees of the Hertz Corporation. The record indicates that the plaintiffs' employment contracts were made in Maryland and that Maryland was their regular place of employment. On February 6, 1980, the three

employees departed in their employer's automobile from Baltimore-Washington International Airport, located in Maryland. They were bound for Dover, Delaware, where they were to pick up rental motor vehicles for Hertz and return them to the airport. Hauch was driving the automobile, with Connor and McIntire as passengers. While traveling in an easterly direction on a highway in Kent County, Delaware, the automobile in which they were riding collided head-on with another vehicle. Immediately following the collision the three parties were treated for their injuries in a nearby Delaware hospital. They later received more extensive treatment in Maryland. Connor and McIntire applied for and were granted benefits under the Maryland workmen's compensation statute. Neither applied for benefits under the Delaware workmen's compensation statute.

Thereafter, Connor and McIntire brought this action against their co-employee Hauch in the Circuit Court for Anne Arundel County, alleging negligence in the operation of the automobile. Following a deposition and interrogatories, the defendant Hauch filed a motion for summary judgment, with an accompanying affidavit, taking the position that the Delaware workmen's compensation law applied to bar the action because the act giving rise to the injuries occurred in Delaware. In their opposition to the motion, the plaintiffs contended that the Maryland workmen's compensation statute should govern under the facts of the case. The circuit court granted the motion for summary judgment. Treating the matter as a question of tort choice of law, the circuit court applied the doctrine of *lex loci delicti* and held that the bar of the Delaware workmen's compensation statute was applicable.

Connor and McIntire appealed, and the Court of Special Appeals reversed. Relying on public policy grounds, the Court of Special Appeals held that the defendant could not invoke the Delaware workmen's compensation statute to defeat the action. *Connor v. Hauch,* 50 Md. App. 217, 225, 437 A.2d 661 (1981).

The defendant Hauch then filed a petition for a writ of certiorari which we granted. In this Court, the defendant argues that the circuit court correctly applied the Delaware workmen's compensation law barring actions between co-employees for injuries arising out of and in the course of employment. She contends that the tort doctrine of *lex loci delicti,* which requires a tort action to be governed by the substantive law of the state where the wrong occurred, is dispositive.

On the other hand, the plaintiffs argue that this Court should abandon the rule of *lex loci delicti* for determining which state's tort law should govern and that we should adopt the significant contacts test as enunciated in the Restatement (Second) of Conflict of Laws, § 145 (1971).[1] Alternatively, the plaintiffs argue that the Maryland Workmen's Compensation Act governs this case because the legislature intended that employees not be precluded from suing fellow employees under circumstances like those here.

## I.

With regard to tort conflicts principles, we reject the position of the Restatement and adhere to the rule that the substantive tort law of the state where the wrong occurs governs. The rule of *lex loci delicti* is well established in Maryland. When its rationale has been put into question,

---

1. "§ 145. The General Principle.

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Restatement (Second) of Conflict of Laws § 145 (1971).

"this Court has consistently followed the rule," *White v. King,* 244 Md. 348, 352, 223 A.2d 763 (1966).

*White* involved a suit in Maryland by injured automobile passengers who alleged that their injuries were caused by the negligence of the driver. The automobile collision giving rise to the injuries occurred in Michigan. The State of Michigan has a guest passenger statute as part of its tort law, while Maryland does not, and the Court held that the Michigan statute governed. Following a discussion of criticisms and alternatives to the rule of *lex loci delicti,* the Court stated that it was

> "not constrain[ed] . . . to find that *lex loci delicti* should be overruled.
>
> * * *
>
> "In what we have said, we do not intend any implication that *lex loci delicti* is, in general, in our opinion, an unjust rule. Hardship may result in a particular case, but that, unfortunately, is true under any general legal principle. Certainty in the law is not so common that, where it exists, it is to be lightly discarded."

*White v. King, supra,* 244 Md. at 355.

Since *White,* we have continued to adhere to the rule of *lex loci delicti. Frericks v. General Motors Corp.,* 274 Md. 288, 336 A.2d 118 (1975), and *Frericks v. General Motors Corp.,* 278 Md. 304, 363 A.2d 460 (1976), are recent reaffirmations of the rule. The *Frericks* cases involved a suit by a passenger who alleged that the injuries he sustained in an automobile collision in North Carolina were caused or enhanced by defects in the vehicle. We held that under the rule of *lex loci delicti,* the product liability principles of North Carolina tort law governed. *Frericks v. General Motors Corp., supra,* 274 Md. at 296, and *Frericks v. General Motors Corp., supra,* 278 Md. at 306, 316-319. Other recent cases in which we have applied the rule of *lex loci delicti* include *Brady v. State Farm Mut. Insur. Co.,* 254 Md. 598,

255 A.2d 427 (1969); *Cook v. Pryor,* 251 Md. 41, 246 A.2d 271 (1968); *Harford Mutual v. Bruchey,* 248 Md. 669, 238 A.2d 115 (1968); *Earl v. Anchor Pontiac,* 246 Md. 653, 229 A.2d 412 (1967); *Mroz v. Vasold, Jr.,* 228 Md. 81, 178 A.2d 403 (1962); *Doughty v. Prettyman,* 219 Md. 83, 148 A.2d 438 (1959).

In addition to the principle of *stare decisis,* other reasons support our adherence to the rule of *lex loci delicti* for determining the applicable tort law. A virtue of the rule, for the courts and all parties concerned, is the predictability and certainty as to which state's tort law will govern. *See White v. King, supra,* 244 Md. at 355. Furthermore, *lex loci delicti* recognizes the legitimate interests which the foreign state has in the incidents of the act giving rise to injury. *Daily v. Somberg,* 28 N.J. 372, 380, 146 A.2d 676, 69 A.L.R.2d 1024 (1958). The foreign state's resources in the form of police protection, medical assistance and highway maintenance, to mention a few, are expended whenever an automobile collision occurs within its borders. Also, when wrongful conduct occurs in a foreign state, it poses a direct threat to persons and property in that state. It follows that the citizens of the foreign state should be the ones to determine, through their tort law, whether particular conduct is tortious and the extent of the monetary sanction.

Consequently, in the instant case all questions concerning substantive tort law are to be governed by the law of Delaware, as it is the state where the collision occurred.

## II.

Our continued adherence to the rule of *lex loci delicti,* however, does not end the inquiry in the present case. Here we are concerned not with differences between Maryland and Delaware tort law, but with differences in the workmen's compensation law of the two states.

In the prior cases reaffirming and applying *lex loci delicti,* the applicable foreign law was substantive tort law. As previously mentioned, a guest passenger statute was

involved in *White v. King, supra,* 244 Md. 348. Such statutes were also involved in *Brady v. State Farm Mut. Insur. Co.,* *supra,* 254 Md. 598; *Cook v. Pryor, supra,* 251 Md. 41; and *Mroz v. Wasold, Jr., supra,* 228 Md. 81. A husband's action for loss of consortium, recognized as a tort in Maryland,[2] was barred in *Harford Mutual v. Bruchey, supra,* 248 Md. 669, because the tort law of Virginia, where the automobile collision occurred, did not recognize the cause of action. As earlier discussed, the *Frericks* cases, 274 Md. 288, 278 Md. 304, involved an action against an automobile manufacturer, based on alleged defects in an automobile causing so-called "second collision" injuries, and the issue was whether the products liability law of North Carolina recognized such a tort cause of action. In contrast, the present case concerns Delaware workmen's compensation law completely barring the "courthouse door" to employees for any and all causes of action they may have against co-employees for injuries sustained in the course of employment, and Maryland workmen's compensation law which does not impose such a threshold bar.

In an earlier period of American legal history, workmen's compensation choice of law questions were often resolved by reference to tort conflicts principles. Occasionally, contract conflicts principles were employed. § 87.22 (c) at 16-57 — 16-58. Thus, when workmen's compensation statutes were first enacted, many courts applied tort conflicts principles and the rule of *lex loci delicti* to claims for compensation benefits. 4A. Larson, *Workmen's Compensation Law* §§ 87.21, 87.22 (c) at 16-54, 57, 58 (1982). This approach was quickly disapproved by state legislatures. As a result, virtually all workmen's compensation statutes today contain their own choice of law provisions and cover out-of-state injuries. For the applicable provision of the Maryland Workmen's Compensation Act, *see* Maryland Code (1957, 1979 Repl. Vol.), Art. 101, § 21 (c) (4).

With regard to workmen's compensation law bars against third party tort actions by employees, a similar phenomenon

---

**2.** Deems v. Western Maryland Ry., 247 Md. 95, 231 A.2d 514 (1967).

occurred. Some courts applied the tort rule of *lex loci delicti.*
*Mitchell v. J. A. Tobin Const. Co.,* 236 Mo.App. 910, 159
S.W.2d 709 (1942); *Pendar v. H. & B. American Mach. Co.,*
35 R.I. 321, 87 A. 1 (1913). Other courts employed a contract
approach. *Scott v. White Eagle Oil & Refining Co.,* 47 F.2d
615 (D. Kan. 1930); *Barnhart v. American Concrete Steel
Co.,* 227 N.Y. 531, 125 N.E. 675 (1920). Today, however,
many courts recognize that workmen's compensation law
conflict issues present distinct policy questions and should
not be treated as tort or contract matters for choice of law
purposes. We agree with this approach.

Suits by employees against their immediate employers for
injuries arising out of and in the course of employment are
now barred by virtually all workmen's compensation
statutes in this country. Nevertheless, "because of varying
rules as to the availability of the exclusive-remedy defense
to the statutory employer," choice of law issues arise with
respect to suits against statutory employers. 4 A. Larson,
*Workmen's Compensation Law, supra,* § 88.10 at 16-131 to
16-132. In these suits, it is generally held that the forum
state will enforce a bar created by the exclusive remedy
statute of any state in which the employer may be liable for
workmen's compensation benefits. *Id.* at 16-132. Although
the outcome in some of these cases is the same as it would
be if the rule of *lex loci delicti* were applied, the underlying
rationale in holding the employer immune is different. The
rationale is that the employer has undertaken the burden of
supplying workmen's compensation insurance in return for
immunity from suit. *Jonathan Woodner Co. v. Mather,* 210
F.2d 868, 873-874 (D.C. Cir. 1954); *Wilson v. Faull,* 27 N.J.
105, 118-119, 141 A.2d 768 (1958). Moreover, in several
cases this rationale has been used to bar an action which
would not be barred under the rule of *lex loci delicti.*[3]

---

3. The cases and rationale were well-summarized by the United States
Court of Appeals for the District of Columbia Circuit, in the *Jonathan
Woodner* case, 210 F.2d at 873-874 (applying the Maryland workmen's
compensation statute):

"Suit by an employee against his employer for damages has
almost invariably been denied where some applicable workmen's

The rationale for precluding employee-employer suits, however, does not apply in actions by employees against fellow employees. 4 A. Larson, *Workmen's Compensation Law, supra,* § 88.21 at 16-145.

Consequently, where actions by injured employees have been brought against co-employees in one state for wrongs committed in another state, courts, even in traditional *lex loci delicti* jurisdictions, have applied the workmen's compensation law of the forum state.

In *Simaitis v. Flood,* 182 Conn. 24, 437 A.2d 828 (1980), an injured employee brought an action in Connecticut against a co-employee based upon the alleged negligent operation of an automobile in Tennessee. Both the plaintiff and defendant were residents of Connecticut; they were hired in Connecticut, and their principal place of employment was in Connecticut. Each of the parties received workmen's compensation benefits under the Connecticut statute for

---

compensation act existed under which the employee could have claimed compensation. Most of these cases involved the situation described above: suit in the place of contracting, the law of the place of injury presenting the bar. And, while suit was ordinarily held barred on the ground that the law of the place of injury controls in a tort suit, a few of these cases indicated that, regardless of where the injury occurred, if the employee could claim compensation anywhere a suit for damages would not be allowed. Other cases, however, are clearer on this point. *Where the state of contracting rather than the state of injury presents a bar, the simple expedient of saying that the law of the place of injury governs a tort action will not prevent suit. In such cases the law of the place of contracting is chosen and again the claimants are relegated to their remedy under the applicable workmen's compensation law — regardless of whether the forum is in the state of injury or the state of contracting.* The language of these cases is sometimes ambiguous; and occasionally a court will justify its choice of law on a seemingly unrelated ground. But the thrust of these groups of cases, taken together, is apparent: *in an employee-employer suit, if some workmen's compensation act purports to bar the action, that bar will be applied in the forum.*

"The rationale underlying these cases, though not articulated, seems clear. The employer has incurred the burden of providing workmen's compensation insurance. The employee has foregone his right to sue the employer for negligence. But both have also gained. The employer has gained an immunity from common law suit. The employee has gained a right to relief even where his injury did not arise through the fault of his employer. The courts clearly consider that this system of mutual give and take would be upset if the employee could sue for negligence in another jurisdiction." (Footnotes omitted; emphasis supplied.)

their injuries sustained in Tennessee. Since Tennessee law did not allow an employee to sue a co-employee for compensable injuries, and the Connecticut workmen's compensation law did permit such suits, the defendant argued that the law of Tennessee applied because that is the state where the alleged wrong occurred. In determining which state's law should apply, the Supreme Court of Connecticut first rejected a contract choice of law rule, even though it observed that such rule would be "certain" and "easily applied." 437 A.2d at 830.[4] Next, it rejected the tort choice of law rule because, "like the contract choice of law approach, the place-of-the-injury rule affords only an unsatisfactory resolution to the workers' compensation choice of laws problem." *Id.* at 831.[5] Finally, the court held that the "proper choice of law rules to apply . . . are the rules

---

**4.** Among other reasons for rejecting a contract choice of law rule, the Connecticut court stated (437 A.2d at 830-831):

> "A . . . problem encountered by this approach is the possibility that an employer can avoid the full extent of potential liability imposed by the Connecticut Workers' Compensation Act simply by making the contract elsewhere, even though all other incidents of employment, such as the place of performance, the employee's residence and the employer's place of business, are in Connecticut. In addition, jurisdictions which have adhered to the contract choice of law rule have become immersed in disputes over contract law to determine where the employment contract was made, disputes which bear no relationship to the purpose of the Workers' Compensation Act."

**5.** The Supreme Court of Connecticut reasoned as follows (437 A.2d at 831):

> "The application of Connecticut's tort choice of law principles to compensation cases would bestow upon temporary visitors injured in Connecticut all the relief which the Connecticut compensation act affords, but deny that same relief to Connecticut residents injured while on temporary business outside the state, even when all other incidents of employment, such as in this case, are in Connecticut. Moreover, if this court were to adhere to a strict application of the place-of-the-injury rule, a Connecticut resident and employee of a Connecticut employer under a Connecticut contract, who was injured while on temporary business in another jurisdiction might be left with no tort remedy whatsoever if that other jurisdiction applied a different choice of law rule. . . .
>
> "The Connecticut Workers' Compensation Act . . . clearly contemplates an award of damages against the defendant for injuries arising out of and in the course of the plaintiff's employment while she temporarily performed duties in Tennessee."

traditionally applied to workers' compensation conflicts cases." *Id.* at 832. The Connecticut court continued *(ibid.):*

"... Tennessee has no legitimate interest in preventing Connecticut from providing the injured employee with a right of action for damages against a third party, particularly where both the employee and the alleged tortfeasor are Connecticut residents, the employer is a Connecticut corporation and the employee was hired and is principally employed in Connecticut."

The court in *Simaitis* concluded *(id.* at 833):

"According to Professor Larson, the applicable law in a workers' compensation case is the law of the place of the employment relation, because 'the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation.' 4 Larson, supra, § 87.40, p. 16-84. There is no question that the employment relation in this case exists in Connecticut, not in Tennessee. For all of the foregoing reasons, the right of action provided by the Connecticut Workers' Compensation Act cannot be denied the plaintiff by Tennessee law."

Another recent case involving an injury in one jurisdiction and a co-employee suit in a different jurisdiction, where the workmen's compensation law of the forum was applied, is *Saharceski v. Marcure,* 373 Mass. 304, 366 N.E.2d 1245 (1977). The parties in that case, Massachusetts residents and employees of a Massachusetts company, were acting in the course of their employment when the plaintiff was injured by the defendant's operation of a vehicle in Connecticut. Massachusetts law, unlike Connecticut law, precluded an employee from suing a fellow employee based on a compensable injury. The Supreme Judicial Court of Massachusetts in *Saharceski* pointed to the distinction

between deciding whether particular conduct was tortious and deciding whether its own residents could sue in its courts (366 N.E.2d at 1249):

> "Although traditionally we would look to the law of the place of the alleged wrong to determine whether the defendant's conduct was tortious, the matter of the right of a particular resident of this Commonwealth to sue and recover from another resident of this Commonwealth may be governed more properly in particular instances by Massachusetts law."

Stating that, since the parties were hired and lived in Massachusetts, neither had a "reasonable basis for expecting" liability under the circumstances, the court held that the Massachusetts workmen's compensation statute should control. *Ibid.*

A New York court applied the workmen's compensation law of the forum, rather than the workmen's compensation law of the state where the injury occurred, in *Fagan v. John J. Casale, Inc.,* 16 Misc.2d 1046, 184 N.Y.S.2d 109 (1959). There a chauffeur employed by a New York trucking company brought an action against a fellow employee for injuries sustained, during the course of employment, in New Jersey. The New York workmen's compensation law prohibited co-employee suits, while the New Jersey law permitted such suits. The injured employee claimed that because the accident occurred in New Jersey, the familiar *lex loci delicti* rule should apply.[6] The New York court rejected this argument and held that the New York workmen's compensation law applied because of "the declared public policy" of the forum. *Fagan v. John J. Casale, Inc., supra,* 16 Misc.2d 1048.[7]

---

**6.** At the time of the *Fagan* case, the New York courts still adhered to the rule of *lex loci delicti* for tort choice of law issues. The "center of gravity" or "grouping of contacts" doctrine was later adopted by the Court of Appeals of New York in Babcock v. Jackson, 12 N.Y 2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).
**7.** A different result was reached in Wilson v. Fraser, 353 F.Supp. 1 (D.Md. 1973), where the administratrix of the estate of a deceased employee

In Maryland, we have not previously been faced with the issue of which state's workmen's compensation law applies when the co-employee action for damages was filed here but the act giving rise to the injuries occurred in another state Nevertheless, in *Hutzell v. Boyer,* 252 Md. 227, 249 A.2d 449 (1969), we recognized that the choice of law issue in co-employee actions was not simply a matter of tort conflict of laws, and that Maryland public policy was an important consideration. In *Hutzell* an employee brought an action in Maryland against a co-employee to recover for injuries sustained when he was a passenger in a truck driven by the co-employee. Both parties were residents of Maryland but were employed in Virginia. They were returning to their Maryland homes from the job site in Virginia when the truck went off the road in Maryland and struck a utility pole. As in the instant cases, the foreign (Virginia) workmen's compensation statute barred co-employee actions. This Court, however, held that the Maryland statute, permitting such actions, governed the case.

While the Court in *Hutzell* did refer to the *lex loci delicti* rule and the fact that the collision occurred in Maryland, this was not the principal basis of the opinion. As pointed out by the Court of Special Appeals in the present case,[8] and by Professor Larson,[9] the principal basis for the decision in *Hutzell* was Maryland public policy. In that case, the defendant argued that the Maryland allowance of co-employee suits did not represent "a formulated or defined public policy against granting immunity to fellow employees from tort action, as provided in the Virginia statute,"

---

sued the estate of the negligent deceased co-employee. The court held that Virginia law, which precluded fellow employee suits, and not Maryland law, applied to bar the action. In reaching this result, however, the court was persuaded by the Maryland Wrongful Death Statute which expressly requires that the substantive law of the place of death govern. In the instant case, we have no occasion to decide whether the choice of law provision of the wrongful death act extends beyond substantive tort issues and encompasses the question of entitlement to bring an action in light of workmen's compensation law.

**8.** Connor v. Hauch, 50 Md.App. 217, 223, 437 A.2d 661 (1981).
**9.** 4 A. Larson, Workmen's Compensation Law, § 88.22, 16-149 (1982).

*Hutzell v. Boyer, supra,* 252 Md. at 233. This Court's response was that the defendant's "argument has not persuaded us." *Ibid.* The Court expressly disagreed with the New Jersey case of *Stacy v. Greenberg,* 9 N.J. 390, 88 A.2d 619 (1952), which had attached little importance to the policy of the forum state in allowing co-employee suits. The *Hutzell* opinion stated that "we are unable to make a similar finding with regard to . . . the public policy of Maryland." 252 Md. at 236.

With regard to the threshold matter of whether the court is open to a particular litigant, obviously the policy of the forum state is extremely important. In this respect, the bar or absence thereof in a state's workmen's compensation statute is somewhat analogous to the bar of a state's statute of limitations. The latter matter, of course, is controlled by the law of the forum.[10]

In light of the policy of the Maryland workmen's compensation law, this Court in *Hutzell* held that Maryland courts are open to co-employee suits even though the place of employment was another state, at least when the parties are residents of Maryland and the injury occurred in Maryland. In the instant case, although the injury did not occur in Maryland, there are greater Maryland interests. Here, in addition to the parties being Maryland residents, their normal place of employment is in Maryland with the Hertz Corporation. Moreover, the plaintiffs and the

---

**10.** Although the rationale often given for the rule that the law of the forum governs the applicable statute of limitations is that the matter is "procedural" (*see, e.g.,* Doughty v. Prettyman, 219 Md. 83, 88, 148 A.2d 438 (1959)), the better reason is that it implicates the public policy of the forum rather than the public policy of another jurisdiction. As Professor Leflar has observed (Leflar, *American Conflicts Law*, §127, at 253 (3rd ed. 1977):

"Access to forum courts is a matter for forum law to determine. Any state may bar suits on extrastate claims on the same limitations grounds that it uses to bar suits on domestic claims. The full faith and credit and equal protection clauses are not violated by such exclusions, and certain social policies may be served by them. The forum's limitations rules represent its policy on the enforcement of stale claims, and a policy of repose may be relevant to all lawsuits filed in the forum's courts regardless of where the claims arose. The technical characterization of a limitations problem as procedural has little if anything to do with this policy . . . ."

defendant made claims for and received benefits under the Maryland Workmen's Compensation Act. Certainly under the reasoning of the cases previously discussed, Maryland workmen's compensation law should determine the threshold question of the right to bring suit in Maryland courts.

> *Judgment of the Court of Special Appeals affirmed.*
> *Petitioner to pay costs.*