**In re SABIN ORAL POLIO VACCINE PRODUCTS LIABILITY LITIGATION.**

No. MDL 780.

United States District Court, D. Maryland.

Sept. 20, 1991.

Marc Moller, Kreindler & Kreindler, New York City, and Stanley Kops, Adler & Kops, Philadelphia, Pa., for plaintiffs.

Rupert Mitsch and Julie Zatz, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION

MOTZ, District Judge.

This is the third in a series of opinions in this multidistrict litigation.[1] On July 12, 1990, I issued an opinion ruling upon summary judgment motions relating to the Government's "discretionary function" defense. *In re Sabin Oral Polio Vaccine Products Liability Litigation*, 743 F.Supp. 410 (D.Md.1990). On April 18, 1991, after a fifteen-day trial, I issued a second opinion finding that the Division of Biologic Standards ("DBS") violated the oral polio vaccine ("OPV") regulations in certain respects and that the United States would be liable under the Federal Tort Claims Act if the individual plaintiffs were able to meet their burden of proof on any issues of causation particular to them. *In re Sabin Oral Polio Vaccine Products Liability Litigation*, 763 F.Supp. 811 (D.Md.1991). This opinion addresses the causation issues in two of the cases, *Miller v. United States* and *Musgrove v. United States*.[2] It also decides the questions of whether the United States owed any duty of care to the plaintiffs and, if so, whether it breached that duty.[3] The parties have stipulated to the amount of damages suffered by plaintiffs, and resolution of these remaining issues therefore makes *Miller* and *Musgrove* ripe for appeal.

## I.

■ The first determination which must be made concerns the choice of law. 28 U.S.C. § 1346(b) confers exclusive jurisdiction in the federal courts over:

claims against the United States, for money damages ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

In *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962), the Supreme Court held that this provision "requires application of the whole law of the State where the act or omission occurred." Here, DBS's relevant acts and

1. As in the earlier opinions, I will use "DBS" to connote the Division of Biologic Standards of the National Institutes of Health and its successors, the Bureau of Biologics and the Office of Biologics Research and Review of the Food and Drug Administration. I will also cite regulations from former volume 42 of the Code of Federal Regulations which currently appear at 21 C.F.R. §§ 630.10–630.17 (1991).

2. The plaintiff in *Miller* was exposed to shed virus from vaccine derived from seed 45 B 85, and the plaintiff in *Musgrove* was exposed to shed virus from vaccine derived from seed 45 B 165. As set forth in my earlier opinions, the issues relating to these two seeds to some extent differ from one another, and it is important that final judgments be entered in regard to plaintiffs exposed to vaccine from both of them in order to assure the appealability of the issues which I have previously decided. The state law issues in the *Miller* case are properly before me because that action was instituted in the District of Maryland. *Musgrove* was instituted in the Northern District of Florida, but the parties have now consented to its transfer to this district to decide all remaining issues.

3. In my second opinion I implicitly ruled that my finding that DBS had violated the OPV regulations resolved the duty of care issues under tort law. I now believe that I erred in so ruling and that the United States has properly continued to raise the duty of care issues in the wake of my second opinion.

omissions occurred in Maryland.[4] Thus, the whole law of Maryland governs *Miller* and *Musgrove.*

■ Maryland follows the *lex loci delicti* choice of law rule in tort cases. *Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207 (1983). This rule "requires a tort action to be governed by the substantive law of the state where the wrong occurred." *Id.* at 123, 453 A.2d at 1209. "The place of injury is the place where the injury was suffered, not where the wrongful act took place." *Johnson v. Oroweat Foods, Inc.,* 785 F.2d 503, 511 (4th Cir.1986) (Maryland law). Here, Mr. Miller contracted polio in Maryland, Mr. Musgrove in Florida. Thus, Maryland law applies to *Miller* and Florida law to *Musgrove.*

## II.

The elements of negligence are axiomatic in Maryland: "a plaintiff must prove the existence of four elements: a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank,* 307 Md. 527, 531, 515 A.2d 756, 758 (1986). The law of Florida is the same. *See, e.g., Peeler v. Independent Life & Accident Ins. Co.,* 206 So.2d 34, 36 (Fla.Dist.Ct.App. 1967). Here, it is, of course, undisputed that the plaintiffs have suffered substantial damages, and, as indicated above, the parties have stipulated to the amount of those damages. Thus, only the questions of the existence of a duty, the breach of that duty and proximate cause remain.

### A. *Existence of Duty*

■ As a threshold matter, it should be noted that the federal OPV regulations, standing by themselves, do not give rise to any legal duty under the FTCA. *See, e.g., Baker v. United States,* 817 F.2d 560, 566 n. 6 (9th Cir.1987), *cert. denied,* 487 U.S. 1204, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988); *Art Metal–U.S.A. v. United States,* 753 F.2d 1151, 1157–58 (D.C.Cir.1985); *Schindler v. United States,* 661 F.2d 552, 560 (6th Cir.1981). The OPV regulations create an FTCA duty only to the extent that they can be analogized to the applicable state tort law governing the conduct of private persons. *Art Metal–U.S.A.,* 753 F.2d at 1158.

■ Plaintiffs contend that DBS's obligation under the regulations is analogous to the duty owed by private persons under the Good Samaritan doctrine. The Restatement (Second) of Torts § 324A (1965), defines that doctrine as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[5]

It is undisputed that the doctrine is part of the tort law both of Maryland and Florida.

---

4. The Government argues that because DBS is a part of the Department of Health & Human Services, which is located in Washington, D.C., the relevant acts and omissions in this case occurred in Washington. This flouts the plain language of § 1346(b). *See Vogelaar v. United States,* 665 F.Supp. 1295, 1300 (E.D.Mich.1987) ("liability under § 1346(b) is to be determined under the law of the place where the negligent act or omission *actually occurs*") (emphasis added). Moreover, virtually any federal governmental entity can be traced up the administrative ladder to Washington, D.C. If the Government's argument were accepted, District of Co-

lumbia law would govern all FTCA cases. This is manifestly not the law.

5. A parallel provision, Restatement (Second) of Torts § 323 (1965), covers situations where the tortfeasor renders services to another and, by failing to exercise reasonable care, causes injury to that person. That provision would apply to persons who contracted polio as the result of the administering of OPV to them. Section 324A applies here because Mr. Miller and Mr. Musgrove both contracted polio after being exposed to vaccine administered to their children.

*See Brady v. Ralph M. Parsons Co.*, 82 Md.App. 519, 534, 572 A.2d 1115, 1123 (1990); *Krieger v. J.E. Greiner Co., Inc.*, 282 Md. 50, 72, 382 A.2d 1069, 1081 (1978) (Levine, J., concurring);[6] *State Dep't of Highway Safety & Motor Vehicles v. Kropff*, 491 So.2d 1252, 1255 (Fla.Dist.Ct. App.1986); *Barfield ex rel. Barfield v. Langley*, 432 So.2d 748, 749 (Fla.Dist.Ct. App.1983).

Other federal courts have indicated that the Good Samaritan doctrine is applicable in FTCA cases such as this one. As the D.C. Circuit has stated, "FTCA claims involving inspection and certification activity commonly rely ... on the good samaritan doctrine." *Art Metal–U.S.A.*, 753 F.2d at 1159 n. 13. More specifically, in *Loge v. United States*, 662 F.2d 1268, 1273–74 (8th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982), the court found that a viable claim based upon the Good Samaritan doctrine could be stated against the United States for the FDA's release of OPV in violation of the governing regulations. *See also Schindler*, 661 F.2d at 561–62; *cf. Griffin v. United States*, 351 F.Supp. 10, 34 (E.D.Pa.1972), *aff'd in relevant part*, 500 F.2d 1059, 1069–70 (3d Cir.1974) (holding the United States liable under Restatement § 281(b) for having created a "recognizable risk of harm" by the improper release of OPV).

*Brady v. Ralph M. Parsons Co.*, 82 Md. App. 519, 572 A.2d 1115 (1990) is also instructive. There, the Maryland Mass Transit Administration contracted with the Parsons Company to ensure safety at a subway construction site in Baltimore. Parsons was supposed to ensure compliance with all occupational safety regulations. *Id.* at 525, 572 A.2d at 1119. It was empowered to inspect the project and, if necessary, order a work stoppage to ameliorate unsafe conditions. *Id.* at 526, 572 A.2d at 1119. A worker at the site was injured. The Maryland Court of Special Appeals held that Parsons was potentially subject to liability to the worker's survivors under Restatement § 324A because it rendered services for his protection. *Id.* at 534, 572 A.2d at 1123.

▮ DBS stands in a position substantially similar to that which was occupied by Parsons. It undertook to regulate a potentially hazardous condition for the benefit of others. Although it was not paid for its services, under § 324A that fact is not material. Therefore, assuming DBS breached its duty to exercise due care (the issue next to be addressed), the United States is liable if the failure to exercise such care increased the risk of harm to the plaintiffs or if the plaintiffs relied upon DBS's undertaking to regulate the release of OPV. As to the latter, it is self-evident that plaintiffs, as the parents of OPV recipients, relied upon DBS officials to comply with the law in approving OPV for use and distribution. Likewise, although there is no necessary or definitive correlation between the results of monkey neurovirulence tests and a vaccine's neurovirulence when administered to humans, monkey neurovirulence testing provides as precise a measure for determining neurovirulence in humans as can reasonably be devised. The law can do no more than adopt the best available scientific standard, and therefore it must be concluded that by releasing vaccine lots whose monkey neurovirulence test results exceeded the regulatory criteria, DBS increased the risk of harm to persons who were vaccinated and to those, like Messrs. Miller and Musgrove, who were exposed to the shed virus.

### B. Breach of Duty of Care

The Government secondarily argues that assuming that DBS was under a duty to plaintiffs, it did not breach that duty. In support of this argument the Government relies upon the findings which I made in my earlier opinion that "[DBS officials] made judgments on extremely difficult

---

6. *Chew v. Meyer*, 72 Md.App. 132, 527 A.2d 828 (1987) is not to the contrary. Although in *Chew* the Court of Special Appeals made the flat statement that "§ 323 is not the law of Maryland," *id.* at 141, 527 A.2d at 832, it appears clear that the court was holding only that Maryland law goes *further* than Restatement (Second) of Torts § 323 (1965) and subjects tortfeasors to liability, under certain circumstances, for economic loss as well as physical injury.

questions which, strictly from the standpoint of public health, appeared to have been entirely proper," 763 F.Supp. 811, 813 (D.Md.1991); that "the OPV used in the United States has always been 'state of the art' vaccine," *id.;* and that vaccine derived from seed 45 B 165 (such as that involved in the *Musgrove* case) was "the safest and most efficacious manufactured," *id.* at 821.

■ The answer to the Government's contention in the *Musgrove* case—which is governed by Florida law—is clear. In *deJesus v. Seaboard Coastline R.R. Co.,* 281 So.2d 198, 201 (1973), the Florida Supreme Court held that where (1) a statute establishes "a duty to take precautions to protect a particular class of persons from a particular injury or type of injury," (2) the plaintiff falls within the class intended to be protected by the statute, and (3) the plaintiff "suffered injury of the type the statute was designed to prevent," a violation of the statute constitutes negligence *per se.* The OPV regulations clearly fall within this category of governmental enactments. Moreover, it is beyond dispute that Mr. Musgrove fell within the class of persons intended to be protected by the regulations and that he contracted vaccine-associated polio, the injury the regulations were designed to prevent. Accordingly, DBS was negligent *per se* under Florida law, and this is dispositive of the breach of duty issue.

■ Maryland law, which controls the *Miller* case, is less clear on the point. A long line of cases holds that the doctrine of negligence *per se* has not been adopted in Maryland and that violation of a statute is merely evidence of negligence. *See, e.g., Brady v. Ralph M. Parsons, Co.,* 82 Md. App. 519, 537, 572 A.2d 1115, 1125 (1990); *Pahanish v. Western Trails, Inc.,* 69 Md. App. 342, 362, 517 A.2d 1122, 1132 (1986); *Hammond v. Robins,* 60 Md.App. 430, 435,

483 A.2d 379, 381 (1984). Prosser & Keeton endorse this formulation. *Prosser & Keeton on the Law of Torts* § 36, at 231 (5th ed. 1984). On the other hand, a separate line of cases suggests that Maryland law does, in fact, recognize negligence *per se* in certain cases. As the Court of Special Appeals put it in *Fisher v. O'Connor's, Inc.,* 53 Md.App. 338, 341, 452 A.2d 1313, 1315 (1982) (quoting *Ford v. Bradford,* 213 Md. 534, 541, 132 A.2d 488, 491–92 (1957)), "Maryland has consistently held that a violation of a statutory regulation is *evidence* of negligence and if the 'violation causes or contributes to the injuries complained of, it constitutes negligence.'" *See also, e.g., Dean v. Redmiles,* 280 Md. 137, 161, 374 A.2d 329, 342 (1977). This language suggests that if the independent element of proximate cause is satisfied, then negligence *per se* does become operative.

■ I will assume that the doctrine of negligence *per se* does not exist in Maryland and that plaintiffs must prove that DBS did breach the duty which it owed to them.[7] In order to prove a breach, plaintiffs must prove that DBS failed to exercise "reasonable care" in approving OPV for release. *Parsons,* 82 Md.App. at 534, 572 A.2d at 1123. I find that plaintiff has met this burden.

The OPV regulations are highly relevant in assessing what constitutes "reasonable care." As a general rule, regulations are to be considered in defining the scope of a tort duty if "the plaintiff [is] a member of the class of persons the statute was designed to protect" and "the injury suffered [is] of the type the statute was designed to protect." *Pahanish,* 69 Md.App. at 362, 517 A.2d at 1132; *see also* Restatement (Second) of Torts § 286 (1965). These elements are clearly satisfied here. The OPV regulations were intended to protect individuals exposed to OPV or the shed virus

---

7. I note that this case is somewhat different from most cases considering the negligence *per se* doctrine in that DBS is not (like the defendants in most cases) merely a person whose conduct is being regulated but is also the governmental entity responsible for doing the regulating. This fact might persuade the Maryland Court of Appeals to apply the negligence *per se* doctrine and hold that proof of the regulatory violations (plus proximate cause) is sufficient to establish liability. Probably, however, the Maryland courts would merely take this fact into account in determining whether DBS had acted unreasonably, i.e. whether it had breached the duty of care.

and one of their underlying purposes was eliminating, to the extent possible, vaccine-associated cases of polio. As I stated in one of my earlier opinions:

> it was the regulations which provided the standard by which DBS officials were required to make their neurovirulence determinations. This standard constituted one of the critical elements of the definition of safety when public approval for the implementation of the OPV program was implicitly given through the adoption of the regulations.

763 F.Supp. at 822. *See also Art Metal–U.S.A. v. United States,* 753 F.2d 1151, 1159 (D.C.Cir.1985) (regulations may be relevant in defining the standard of care); *Schindler v. United States,* 661 F.2d 552, 561 (6th Cir.1981) (same).

Not every violation of the regulations necessarily is unreasonable and a breach of duty. For example, I have previously held the DBS was not negligent in failing to follow the test regimens mandated by 42 C.F.R. § 73.114(b)(1)(i) and (ii) because the evidence at trial was undisputed that the modified test regimens which DBS followed yielded more complete and reliable information than the regimes originally prescribed.

763 F.Supp. at 826. However, because food and drug legislation (and regulations implementing them) "touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection," *United States v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943), any statutory or regulatory violation must be subjected to extremely close scrutiny and can be justified only by exceptional circumstances.

Here, DBS's actions cannot withstand such scrutiny. I have previously expressed my appreciation of the dilemma in which DBS officials found themselves and indicated that I fully understood the reasons which motivated them from a public health standpoint. *See, e.g.,* 763 F.Supp. at 822. However, whether or not the officials acted in good faith is not the issue. Nor can their conduct be justified by the fact that

they approved and released the best vaccine which could have been manufactured. The fact remains that they approved vaccine exceeding the neurovirulence criteria which had been established in the regulations as a means for defining acceptable risk. They were fully aware that the vaccine did not pass the regulatory tests and deliberately chose not to seek to have the regulations amended. The very consideration which ultimately led them to bypass the amendment process—their fear that serious opposition to the OPV program might be expressed—required that the process be complied with.

In short, DBS officials arrogated to themselves the power to define what constituted an acceptable risk, thereby undermining the rule of law and threatening long-term public confidence in the regulatory system itself. This conduct certainly cannot be deemed to be reasonable as a matter of law and may well have been unreasonable as a matter of law. In any event, to the extent that the matter is one entrusted to me as the finder of fact, I have no hesitation in finding—just as I would urge were I a member of a jury panel—that the regulatory violations which DBS committed were, considered under the totality of all of the circumstances, unreasonable and a breach of the duty of care.

### C. *Proximate Cause*

The final issue which must be considered is whether DBS's regulatory violations constituted a proximate cause of plaintiffs' injuries. Proximate cause expresses "the legally cognizable nexus between the breach of duty and the damages suffered." *Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 713, 501 A.2d 35, 39 (1985). Although the term cannot be precisely defined, the Maryland Court of Special Appeals has provided guidance as to how it should be determined:

> It is generally held that negligence is the proximate cause of an injury when the injury is the natural and probable result or consequence of the negligent act or omission. The test is whether the injury sustained was that which was reasonably foreseeable, in light of the surrounding

circumstances. It is equally correct, however, that proximate cause must 'be decided in a common-sense fashion in light of the attendant facts and circumstances....' The court should not indulge in refinements and subtleties as to causation which would defeat the ends of justice.

*Medina v. Meilhammer*, 62 Md.App. 239, 247, 489 A.2d 35, 39 (1985). *See also* Restatement (Second) of Torts § 431 (1965) (conduct is proximate cause of injury if it "is a substantial factor in bringing about the harm"). The Government has not suggested that Florida law on the issue is different in any material respect.

 █ I have previously expressed my view that if plaintiffs' claims were based entirely upon original licensure issues, "a substantial issue of proximate cause would be presented." 763 F.Supp. at 828. The connection between the improprieties in the original licensing of Lederle type 3 vaccine and plaintiffs' injuries is extremely tenuous, particularly in light of the uncontradicted evidence that it was extremely likely that Lederle type 3 vaccine would ultimately have been licensed in any event. The correlation between plaintiffs' injuries and the regulatory violations committed in connection with the release of lots manufactured from seed 45 B 85 and the approval of seed 45 B 165, however, is much closer. Mr. Miller contracted polio from vaccine derived from seed 45 B 85, and Mr. Musgrove contracted polio from vaccine derived from seed 45 B 165. If those two seeds had not been in use, the vaccine giving rise to the injuries would not have been manufactured. The evidence clearly establishes that but for DBS's negligence, the seeds would not have been used.

The Government points to the fact that the specific lots from which the vaccines involved in the *Miller* and *Musgrove* cases were derived themselves met the regulatory neurovirulence criteria. This contention entirely misses the point. Regardless of the acceptability of the specific lots from which were derived the vaccine given to Mr. Miller's child, if DBS had properly applied 42 C.F.R. § 73.114(b)(1)(iii) in connec-

tion with lots derived from seed 45 B 85, the seed would not have been used. This is so because Lederle would have been unable to satisfy the consistency requirement found in 42 C.F.R. § 73.116(c). Likewise, regardless of the acceptability of the lots from which the vaccine administered to Mr. Musgrove's child were derived, the lots would never have been produced and released but for the approval of seed 45 B 165 in violation of 42 C.F.R. § 73.113(b). Thus, the causal connection between the regulatory violations and plaintiffs' injuries are logical, sensible and direct.

The Government's final contention is that proximate cause is lacking because DBS would have amended ˌthe regulations to permit release of vaccine it viewed as scientifically acceptable if DBS had believed the unamended regulations would not permit such release. This contention is, at best, speculative and, at worst, directly contrary to the evidence. As fully set forth in my second opinion in this case, 763 F.Supp. at 818–21, the record clearly demonstrates that Government officials considered seeking amendments to the regulations but deliberately chose not to follow that course. The Government cannot simply now rewrite history to retell events as it wishes they had unfolded.

### III.

In summary, I find that DBS was under a duty to Mr. Miller and Mr. Musgrove, that (by committing the regulatory violations which I have previously found) it breached that duty, and that the breach of duty proximately caused the injuries which plaintiffs suffered. These findings, together with the stipulation into which the parties have entered concerning the amount of damages which should be awarded, bring this phase of the proceedings in the *Miller* and *Musgrove* cases to an end.