984 F.2d 124
 In re SABIN ORAL POLIO VACCINE PRODUCTS LIABILITY LITIGATION.
Deborah MILLER, Individually and as Administrator of the
Estate of William Miller and as mother and natural guardian
of Kristen Miller and Michael Miller, minors; Randy L.
Musgrove; Cynthia J. Musgrove, Plaintiffs-Appellees,
and
Lederle Laboratories; Connaught Laboratories, Ltd., Plaintiffs,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 91-2398.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 7, 1992.
Decided Jan. 21, 1993.
 
 Rupert Mark Mitsch, Sr. Trial Counsel, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Asst. Atty. Gen., Jeffrey Axelrad, Director, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, Richard D. Bennett, U.S. Atty., Baltimore, MD, Margaret Jane Porter, Chief Counsel, and Ann H. Wion, Associate Chief Counsel for Drugs and Biologics, Food & Drug Admin., Dept. of Health and Human Services, Rockville, MD, on brief), for appellant.
 Marc Simon Moller, Kreindler & Kreindler, New York City, argued (Stanley P. Kops, Philadelphia, PA, on brief), for appellees.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The United States appeals judgments awarding damages to Randy Musgrove and to the administratrix of the estate of William Miller for injuries caused by live trivalent and polio vaccine approved by the Department of Biological Services (DBS) in violation of pertinent regulations. Infants who had been vaccinated with live polio vaccine transmitted type III, crippling poliomyelitis to their respective fathers, Musgrove and Miller. The judicial panel on multidistrict litigation transferred seven actions, including Musgrove's and Miller's, to Judge J. Frederick Motz in the District of Maryland for resolution of their common factual and legal issues.
 
 
 2
 The district court denied the government's motion for summary judgment that sought to bar the plaintiffs' actions by application of the discretionary function exception to the Federal Torts Claims Act, 28 U.S.C. § 2680(a). In re Sabin Oral Polio Vaccine Products Liability Litigation, 743 F.Supp. 410 (D.Md.1990) (Sabin I ). After a 15-day trial, conducted by consent of the parties without the intervention of a jury, the district court held that DBS violated two regulations governing the manufacture and release of oral polio vaccine. In re Sabin Oral Polio Vaccine Products Liability Litigation, 763 F.Supp. 811 (D.Md.1991) (Sabin II ). After a subsequent trial on the issues of duty, breach, and causation, the court entered final judgments for Musgrove and for Miller's administratrix, awarding damages in amounts stipulated by the parties. In re Sabin Oral Polio Vaccine Products Liability Litigation, 774 F.Supp. 952 (D.Md.1991) (Sabin III ).
 
 
 3
 In its assignments of error on appeal, the government contends:I. The discretionary function exception bars this action because plaintiffs' claims confront policy decisions relating to the safety of vaccines;
 
 
 4
 II. Since DBS approved only state of the art vaccine, it did not breach its duty to the plaintiffs;
 
 
 5
 III. DBS's failure to amend the OPV regulations was not the proximate cause of plaintiffs' injuries because a safer vaccine could not have been released to the public.
 
 
 6
 In its three opinions, the district court reviewed the regulations governing the production of OPV. It carefully considered the contentions of the parties, and it explained in detail its rationale of decision. Concluding that the district court correctly decided this controversy, we affirm for reasons set forth in its opinions.
 
 
 7
 Parenthetically we note that the plaintiffs have settled with Lederle Laboratories, manufacturer of the vaccine. This litigation is not governed by the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 to 300aa-34, which compensates for vaccine related injuries or deaths. This litigation is governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.; the Public Health Service Act, 42 U.S.C. §§ 262 et seq.; the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and regulations, 42 C.F.R. §§ 73.110-73.118 (recodified as 21 C.F.R. §§ 630.10-630.17 (1991)). For consistency with the district court, we will refer to the regulations as originally promulgated.
 
 
 8
 * In Sabin I, 743 F.Supp. 410, the district court denied the plaintiffs' motion for summary judgment. The court sustained in part the government's motion for summary judgment. It denied part of the government's motion for summary judgment by rejecting the application of the discretionary function defense to DBS's actions that involved two regulations governing the implementation of the OPV program. This aspect of DBS's conduct is the principal issue in this appeal.
 
 
 9
 Federal law requires a product license for marketing live oral polio vaccine. 42 U.S.C. § 262(a). DBS may issue a license only upon a showing that the product meets the standards prescribed by the regulations. § 262(d). Pertinent to this litigation are two regulations that embody the recommendations of the Surgeon General's ad hoc committee on the feasibility of the OPV program:
 
 
 10
 Virus passages. Virus in the final product shall represent no more than five tissue culture passages from the original strain, each of which shall have met the criteria of acceptability prescribed in § 73.110(b).
 
 
 11
 42 C.F.R. § 73.113(b).
 
 
 12
 Musgrove claims that he contracted type III polio because DBS released vaccine derived from seed 45 B 165 that did not comply with this regulation since it was more than five tissue passages from the original strain.
 
 
 13
 Regulation 73.114 requires a "test for safety." The test involves inoculation of monkeys to determine neurovirulence. The regulation provides in part:
 
 
 14
 The virus pool under test is satisfactory for poliovirus vaccine manufacture only if at least 80 percent of the animals in each group survive the observation period and if a comparative analysis of the test results demonstrate[s] that the neurovirulence of the test virus pool does not exceed that of the NIH Reference Attenuated Poliovirus.
 
 
 15
 42 C.F.R. § 73.114(b)(1)(iii). The NIH Reference Attenuated Poliovirus type 1 was the control or reference for the monkey tests. § 73.111.
 
 
 16
 Miller's administratrix claims that Miller contracted type III polio because DBS, in violation of § 73.114(b)(1)(iii), released a vaccine derived from seed 45 B 85 that exceeded the NIH reference.
 
 
 17
 Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), deals with the application of the discretionary function defense to the OPV program. The Court reversed a judgment that "the licensing and release of polio vaccines were wholly discretionary actions and, as such, could not form the basis for suit against the United States." 486 U.S. at 534, 108 S.Ct. at 1957. The Court explained its reasoning by setting forth two cardinal principles: "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." 486 U.S. at 536, 108 S.Ct. at 1958-59.
 
 
 18
 The second principle describes the other side of the coin: "[T]he discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." 486 U.S. at 537, 108 S.Ct. at 1959.
 
 
 19
 Referring to the release of vaccine, the Supreme Court stated, "if the Bureau's policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful." 486 U.S. at 546-47, 108 S.Ct. at 1964. The Court then applied these principles to the allegations of the Berkovitz complaint, which charged that government employees knowingly released vaccine that did not comply with safety standards. The Court concluded that if the evidence subsequently sustained these allegations, the discretionary function exception would not bar the claim. 486 U.S. at 547, 108 S.Ct. at 1964.
 
 
 20
 Relying on Berkovitz, the district court concluded that the regulations set forth the policy decisions regarding the appropriate standards for release of the vaccine. It held that the government employees were obliged to abide by these standards. It rejected DBS's interpretation of the regulations that departed substantially from their plain language. Consequently, the district court correctly held that the discretionary function exception does not bar the plaintiffs' action. Accord Baker v. United States, 817 F.2d 560 (9th Cir.1987); Loge v. United States, 662 F.2d 1268, 1272-73 (8th Cir.1981); Griffin v. United States, 500 F.2d 1059, 1063-69 (3d Cir.1974).
 
 II
 
 21
 In Sabin II, 763 F.Supp. 811, the district court decided the issues of liability. In its opinion, the district court accurately recounted the evidence and carefully considered the contentions of the parties. It rejected many of the claims of negligence pressed by the plaintiffs. Ultimately, however, it found that DBS subjected the government to liability by violating two regulations. It found that DBS released vaccine lots that were more than five tissue culture passages from the original Sabin strain in violation of 42 C.F.R. § 73.113(b). The district court also found that DBS violated 42 C.F.R. § 73.114(b)(1)(iii) by releasing vaccine lots that exceeded the reference vaccine in neurovirulence.
 
 
 22
 In making these findings, the district court acknowledged that the officers of DBS and their consultants were motivated by what they perceived to be the public interest. Confronted by the prospects of delay in the OPV program and concerned about the public's possible adverse reaction to the program if DBS undertook to amend the regulations, they elected to take other actions which they deemed to be safe, rather than seek amendments to the regulations. The district court found that although the vaccine DBS released was "state of the art," it was not vaccine that conformed to the safety provisions of the regulations. In agreement with the district court, we conclude that DBS's concerns cannot justify the violation of the regulations. Cf. Griffin, 500 F.2d at 1063-70.
 
 III
 
 23
 In Sabin III, 774 F.Supp. 952, the district court tried the remaining issues pertaining to Musgrove and Miller. To comply with the Federal Tort Claims Act the district court applied Florida law to Musgrove's case, and it applied Maryland law to Miller's case. The court held that the government owed a duty of care to these plaintiffs and that it breached this duty. With respect to Musgrove it held that under Florida law a violation of the regulations constituted negligence per se.
 
 
 24
 With respect to Miller, the court held that Maryland law required proof that DBS failed to exercise reasonable care in approving OPV for release. After considering this issue, the district court summed up its reasoning as follows:
 
 
 25
 In short, DBS officials arrogated to themselves the power to define what constituted an acceptable risk, thereby undermining the rule of law and threatening long-term public confidence in the regulatory system itself. This conduct certainly cannot be deemed to be reasonable as a matter of law and may well have been unreasonable as a matter of law. In any event, to the extent that the matter is one entrusted to me as the finder of fact, I have no hesitation in finding--just as I would urge were I a member of a jury panel--that the regulatory violations which DBS committed were, considered under the totality of all of the circumstances, unreasonable and a breach of the duty of care.
 
 
 26
 774 F.Supp. at 957.
 
 
 27
 The final point of appeal concerns the district court's determination that DBS's approval of the lots was the proximate cause of Musgrove's and Miller's injuries. The test of probable cause is one of "reasonable probability or reasonable certainty." Waffen v. United States Department of Health & Human Services, 799 F.2d 911, 917-18 (4th Cir.1986); see also Sakon v. PepsiCo, Inc., 553 So.2d 163, 164-65 (Fla.1989); Jubb v. Ford, 221 Md. 507, 157 A.2d 422, 425 (1960). In other words, "[t]he plaintiff has the burden of introducing evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." Waffen, 799 F.2d at 918.
 
 The district court concluded:
 
 28
 Regardless of the acceptability of the specific lots from which were derived the vaccine given to Mr. Miller's child, if DBS had properly applied 42 C.F.R. § 73.114(b)(1)(iii) in connection with lots derived from seed 45 B 85, the seed would not have been used. This is so because [the manufacturer] would have been unable to satisfy the consistency requirement found in 42 C.F.R. § 73.116(c). Likewise, regardless of the acceptability of the lots from which the vaccine administered to Mr. Musgrove's child were derived, the lots would never have been produced and released but for the approval of seed 45 B 165 in violation of 42 C.F.R. § 73.113(b). Thus, the causal connection[s] between the regulatory violations and plaintiffs' injuries are logical, sensible and direct.
 
 
 29
 Sabin II, 774 F.2d at 958.
 
 
 30
 The government's argument that the failure to amend the regulation was not the proximate cause of the plaintiffs' injuries misconstrues the plaintiffs' claims and the district court's opinion. DBS's liability arose out of releasing vaccine in violation of the regulations, not in its failure to amend the regulations.
 
 IV
 
 31
 Upon consideration of the record, briefs, and oral argument, we find no error. We have only summarized the district court's extensive opinions, and we reiterate that we affirm for reasons the district court adequately stated.
 
 
 32
 AFFIRMED.