Hubert FRIEND and Delora Friend, Personally and as Co–Trustees of the Hubert Friend Family Trust, Plaintiffs–Appellants,

v.

YOKOHAMA TIRE CORPORATION, f/k/a Mohawk Rubber Co. and Friend Tire Service, Inc., Defendant–Respondent.

No. 19774.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 4, 1995.

Henry S. Clapper, Monett, W. Patrick Betterman, Daniel P. Bracht, Betterman, Katelman & Holtz, Omaha, Neb., for appellant.

Carr L. Woods, Monett, for respondent.

PREWITT, Presiding Judge.

Plaintiffs' petition stated Defendant leased property from Plaintiffs and breached the lease by damaging the property, including "environmental damage", and committing waste upon it. Other claims joined with these were dismissed, either voluntarily or by court order. Except for the directed verdict on two counts hereinafter discussed, those claims are not relevant to the issues raised here.

On Count I, for breach of the lease, the jury found damages of $15,000.00 related to the parking lot, and no damages for environmental claims. For Count II, the jury awarded damages of $1.00 for waste. Judgment was entered in accordance with the verdict. Plaintiffs appeal.

Plaintiffs, by their first point, contend that the trial court erred in overruling their motion for judgment notwithstanding the verdict "because appellant's motion for directed verdict at the close of all the evidence was well-founded and should have been granted as to both counts submitted to the jury; there was no issue upon which reasonable minds could differ relating to the damages proven by appellants and the accord and satisfaction defense failed as a matter of law."

Entering a judgment notwithstanding the verdict "is the equivalent of directing a verdict at the close of the evidence." *Schnatzmeyer v. Nat'l. Life Ins. Co.*, 791 S.W.2d 815, 820 (Mo.App.1990). Generally a court should not direct a verdict for the party having the burden of proof when the evidence relied on consists of oral testimony. *Strang v. Deere & Co.*, 796 S.W.2d 908, 913 (Mo.App.1990). This should be done only where the opposing party, by pleading, by counsel in open court, or by the opposing party's evidence, establishes plaintiff's claim, or where there is no real dispute of the basic facts. *Id.*

Even though a party does not supply the court with expert testimony contrary to the plaintiff's, the plaintiff would not ordinarily be entitled to a directed verdict as the weight and believability of the expert testimony is for the jury. *Strang,* 796 S.W.2d at 913; *Harper v. NAMCO, Inc.,* 765 S.W.2d 634, 639 (Mo.App.1989).

Plaintiffs had the burden of proof and there were disputed, relevant facts on whether there was damage caused by Defendant and the extent of it. Plaintiffs were not entitled to a directed verdict or judgment notwithstanding the verdict. Point I is denied.

■ Plaintiffs in their second point contend that the trial court erred in allowing a witness for Defendant, Raymond Forrester, to testify "without any foundation, relating to negotiating with the Missouri Department of Natural Resources and the possible response of the Missouri Department of Natural Resources because the testimony was speculative and lacked proper foundation."

Forrester testified that remediation in regard to water contamination was "completely unnecessary". He said this was because "the levels found in their water samples would not require cleanup if the site were handled by the standard methods for negotiating a cleanup used by the Missouri Department of Natural Resources." The transcript further reveals the following from his testimony during direct examination:

Q [Counsel for Defendant] Mr. Forrester, do you have experience dealing with the Missouri Department of Natural Resources and the Environmental Protection Agency of the United States?

A Yes, I have.

Q And what is that—what has your experience been with those agencies?

A My experience has been that when you present them with information that is based on sound data, that you follow their guidelines and recommendations which in this case allow for a site specific establishment of cleanup levels for both the soil and water, that they will be very reasonable in that regard.

Q In your opinion, under a worst case scenario, what remedial actions might either of those agencies require at this site?

A My opinion is, under the—a worst case scenario—

MR. BETTERMAN: Same objection as before, Your Honor, as to speculation.

THE COURT: Overruled.

THE WITNESS: My opinion is that the State would not require groundwater remediation at this site at all and that the samples that are around S–1 and B–7, that possibly a couple of scoops full of—from a backhoe would remove the entirety of the contamination that was found. This would be in a shallow area, no more than about three feet deep around S–1 and in an area similar around B–7.

In closing argument, Defendant's attorney referred to Forrester's testimony as raising "many questions about the reliability and the validity of the report" of experts hired by Plaintiffs.

Admissibility of expert testimony is generally governed by § 490.065 RSMo 1994. Before and after the enactment of that statute, Missouri courts have held that the decision to admit or exclude such testimony is within the discretion of the trial court. *Ryan v. Parker,* 812 S.W.2d 190, 194 (Mo.App.1991); *see also State ex rel. Missouri Highway and Transportation Com'n. v. Gannon,* 898 S.W.2d 141, 143 (Mo.App.1995); *Stucker v. Chitwood,* 841 S.W.2d 816, 818–821 (Mo.App.1992).

■ Even if government agencies are "very reasonable", which may be saying they are lenient, such does not establish whether environmental damage has occurred or not, or the extent of it. What the governmental agencies would do in a specific case is highly speculative. In certain situations an expert may testify regarding what a governmental agency, such as a zoning board, may do if there are sufficiently-introduced facts which support the opinion. *See, e.g., Gannon,* 898 S.W.2d at 143. Certainly, rezoning may affect the value of the property taken in a condemnation action. Here, it was for the jury to determine not what a governmental agency may have done, but the extent of the damage, if such existed. This testimony should not have been introduced, but as we reverse and remand upon other points, its prejudicial effect is not discussed.

■ Plaintiffs' next two points are closely related and are considered together. These points assert the trial court erred in allowing Defendant's counsel to use illustrated material not admitted into evidence in his closing argument, and to comment upon purported facts shown on the materials.

During the evidentiary portion of the trial, Defendant offered as evidence illustrated sheets of paper marked Exhibits JJ, KK, LL, and MM. Those offers were refused. The trial court allowed these materials to be shown to the jury and discussed by Defen-

dant's counsel in his closing argument. Defendant contends that the use of these materials was proper, "because the extent to which visual aids may be used rests within the sound discretion of the trial court", and "because Respondent's counsel's comments were proper and the trial court did not abuse its discretion in allowing same."

An offer of proof as to the exhibits was made without the jury present. Exhibit JJ was described by Defendant's expert, who either prepared it or supervised its preparation, as "a description of a dump truck and the amount of soil that would be contained in a dump truck, which would be about 9 to 10 cubic yards of soil per dump truck." The exhibit was offered and Plaintiffs' counsel objected "on the grounds of foundation, contains hearsay, exceeds the scope of rebuttal, is irrelevant, and that's all I can think of." The court refused the exhibit.

Defendant's exhibit KK was described by this witness as "a calculation of the number of dump trucks that would be required to remove 1,100 cubic yards of soil. And that would be approximately 122 dump trucks." It also shows a dump truck followed by "x 122". After the offer of exhibit KK, Plaintiffs' attorney made the same objection by reference, and the court refused the exhibit.

Defendant's exhibit LL was described by Defendant's expert as depicting "122 dump trucks, the number of dump trucks that would be required to remove 1,100 cubic yards of soil." At the bottom of the depictions of 122 dump trucks it states, "1100 cubic yards = 122 dump truck-loads." When this exhibit was offered, Plaintiffs' attorney made the same objection, and the court refused the exhibit.

Exhibit MM was described by the witness as depicting "the volume or the amount of benzene, toluene, ethyl benzene and xylene that would be removed by removing 1,100 cubic yards of soil, based upon the concentration of these materials that were found in the soil at the site." [1]

At the top of MM is stated: "Plaintiffs want Defendants to remove 1,100 cubic yards of soil, which is equivalent to 122 dump truck-loads". Near the center is shown a depiction of a dump truck then "x 122". Below the truck it states, "in order to remove . . .". Below this phrase, moving from left to right, is what appears to be one measuring spoon, and under it, "1 teaspoon of Benzene". Next, three measuring spoons are shown with "3 teaspoons of Toluene" printed under them. Then to the right of that, six spoons are shown, with "6 teaspoons of Ethylbenzene" printed below. This is followed by another graphic of ten measuring spoons under which is printed "9 teaspoons of Xylenes". Finally, fifteen spoons are depicted with "15 teaspoons of Acetone" below them.[2]

Defendants do not argue in their brief or otherwise refer us to any place in the record which shows that there was evidence presented to the jury supporting the calculations and contentions reflected in these exhibits. Defendant's counsel informed the court that they wanted to "show these four exhibits during closing argument." Plaintiffs' counsel objected on the basis now raised, and the court allowed their use "as illustrations of an argument . . ."

In argument, Defendant's counsel told the jury, ". . . we have these exhibits to help you understand exactly what an outrageous demand these plaintiffs are suggesting that you perform in asking for a plaintiffs' verdict." He then proceeded to refer to the information contained in the exhibits. Counsel frequently referred to the contamination as being measured in teaspoons, as reflected in the exhibits.

It is improper for counsel in his argument to the jury to comment on evidence which was excluded by the court when offered on the trial, or to suggest the impression that certain excluded evidence would have made on the jury had the court permitted counsel to introduce it, or otherwise to make statements which are intended to get before the jury facts which coun-

---

1. The exhibit also refers to "15 teaspoons of acetone", not referred to in the testimony. Ethyl benzene in the transcript is shown as one word, "Ethylbenzene", on the exhibit.

2. Why ten measuring spoons are depicted above "9 teaspoons of Xylenes" was not explained.

sel was not entitled to give in evidence on the trial.

75A Am.Jur.2d *Trial* § 615, pp. 213–214 (1991). The use of the exhibits was improper. *See Kopp v. C.C. Caldwell Optical Co.,* 547 S.W.2d 872, 878–879 (Mo.App.1977); *see also Lester v. Sayles,* 850 S.W.2d 858, 864 (Mo. banc 1993) (courts may not authorize jurors to view unadmitted evidence).

Defendants contend that the use of the exhibits was permissible under such holdings as *Boese v. Love,* 300 S.W.2d 453, 461 (Mo. 1957), in which a diagram was used which was not admitted into evidence. Other cases discussing use of visual aids include *In re Passman,* 537 S.W.2d 380, 385–386 (Mo. banc 1976) and *Walkley v. Sears, Roebuck & Co.,* 536 S.W.2d 169, 171 (Mo.App.1976). In *Boese,* the court said:

> It would seem the use in argument by counsel of graphic aids such as charts or diagrams or plats which have not been put into evidence is permissible, provided they are used merely to illustrate or elucidate a point in counsel's argument based on the evidence, and provided they are not used in such a manner as to tend to confuse or mislead the jury into considering them as evidence.

300 S.W.2d at 461.

Defendant contends that these exhibits were used to help the jury understand the testimony of their expert who was instrumental in preparing them. However, Defendant's closing argument went further than its expert's testimony, and referred to the exhibits showing that the contamination of the soil was measurable in teaspoons. Their expert did not so state. He expressed measurements in terms of "parts per million".

Except from the offer of proof outside the jury, there is no indication that the exhibits are an accurate illustration of what the expert believed, and they do not show what he testified to before the jury. Because they are not based on facts in evidence the exhibits should not have been used in argument. They were effectively used as presenting additional evidence. As such, their use was error, under the reasoning in such cases as *Kopp.* This use appears prejudicial, as it was obviously intended to, and apparently did demean Plaintiffs' case by comparing teaspoons to dump trucks, on a basis not supported by the evidence. The trial court improperly allowed counsel to use exhibits JJ, KK, LL, and MM in closing argument. Points II and III have merit.

We briefly discuss Appellants' remaining points which may appear upon retrial. As mentioned in the opening paragraph, the trial court granted a directed verdict on two counts of Plaintiffs' petition. Count VI sought damages based upon negligence per se.

■ Appellants' negligence per se case was based on §§ 319.100, et seq., RSMo Supp.1989 pertaining to underground storage tanks. Defendant does not contend that a private civil action cannot be based upon those statutes, *see Johnson v. Kraft General Foods, Inc.,* 885 S.W.2d 334, 336 (Mo. banc 1994), but limits its brief to a discussion only of proximate cause. Therefore, this is the only contention we discuss. *See BCCLW/Casey, Inc. v. S.O. Gillioz Partners, Inc.,* 783 S.W.2d 174, 175 (Mo.App.1990).

■ One of the elements of a negligence per se action is that the violation of a statute was the proximate cause of the injury. *Imperial Premium Fin., Inc. v. Northland Ins. Co.,* 861 S.W.2d 596, 599 (Mo.App.1993). There was evidence that underground storage tanks were owned by Defendant, that liquid contamination of the ground came from the tanks and damaged the property. Proximate cause was sufficiently shown. The trial court erred in directing a verdict on Count VI.

■ Appellants also contend that the trial court erred in directing a verdict on Count IV, a claim of exemplary, or punitive, damages against Defendant. Directing a verdict is a drastic action, appropriate only when the evidence and reasonable inferences therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ. *First Nat'l. Bank of Ft. Smith v. Kansas City Southern Ry. Co.,* 865 S.W.2d 719, 726 (Mo.App.1993). In determining whether a submissible case is made, the court views the evidence in the light most

favorable to the plaintiff disregarding contrary inferences. *Id.*

In creating the contamination, if it did, we find no evidence that Defendant's conduct showed complete indifference or a conscious disregard for the safety of others. *See First Nat'l.*, 865 S.W.2d at 726–727; MAI 10.02 (1991). We find no error in the trial court directing a verdict and refusing to submit to the jury punitive damages.

The remaining contention that might re-arise on retrial pertains to the testimony of Leslie Jankausky. Appellants contend that the trial court erred in preventing them from introducing her testimony that, in her opinion, no outside contamination of a sample occurred as a result of being in a cracked container when it arrived at her employer, an "environmental laboratory". A reading of the record discloses that although the trial court did originally exclude that testimony, after further information was elicited from the witness as to her education and training, it was allowed. There could be no prejudicial error due to the earlier ruling

The judgment is reversed and the cause remanded for new trial.

GARRISON and PARRISH, JJ., concur.