UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

St. Louis University, a corporation,
            *Plaintiff-Appellant,*

v.

United States of America,
            *Defendant-Appellee.*

and

American Cyanamid Company,
            *Party in Interest.*

No. 99-2227

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-95-3639-JFM)

Argued: November 2, 2000

Decided: March 1, 2001

Before NIEMEYER, LUTTIG, and TRAXLER, Circuit Judges.

_____

Reversed and remanded by unpublished opinion. Judge Traxler wrote the majority opinion, in which Judge Luttig joined. Judge Niemeyer wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Marc Simon Moller, KREINDLER & KREINDLER, New York, New York, for Appellant. Mary McElroy Leach, Senior

Trial Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Henry Gluckstern, Special Counsel, KREINDLER & KREINDLER, New York, New York; Rex Carr, CARR, KOREIN, TILLERY, KUNIN, MONTROY & GLASS, East St. Louis, Illinois; Stanley P. Kops, Philadelphia, Pennsylvania; Mark R. Dunn, HERZOG, CREBS & MCGHEE, L.L.P., St. Louis, Missouri, for Appellant. David W. Ogden, Acting Assistant Attorney General, Lynne A. Battaglia, United States Attorney, Jeffrey Axelrad, Director, Torts Branch, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

TRAXLER, Circuit Judge:

After an adverse jury verdict in a Missouri state court case involving a recipient of Orimune, an oral polio vaccine, St. Louis University ("SLU") brought this contribution action against the United States government. SLU contended that the government's improper approval of certain "seeds" of the polio vaccine was the cause of the state-court plaintiff's injuries and that the government was therefore required to contribute to the payment of the Missouri verdict. The district court first ruled that SLU was collaterally estopped from denying certain facts necessarily decided by the jury in the Missouri action. The district court thereafter granted summary judgment in favor of the government, concluding that SLU failed to present any evidence tending to show that any fault on the part of the government caused the injury to the state court plaintiff. SLU appeals. We reverse and remand for further proceedings.

## I. BACKGROUND

### A. The State Court Action

In 1978, three-month-old Danny Callahan received a dose of Orimune, an oral vaccine containing an attenuated strain of a live polio

virus. Approximately one month later, Danny developed a perirectal abscess that was treated by employees of Cardinal Glennon Hospital and SLU. The abscess was not drained and no culture was taken to determine if the infection was caused by gram positive or gram negative bacteria. Danny was given an antibiotic that was effective only on gram positive bacteria. After several days, Danny's condition had not improved, and his mother noticed that his legs appeared to be "floppy." His parents took him back to the hospital, where the abscess was incised and drained. Cultures of the abscess revealed four types of gram negative bacteria, and Danny was given an antibiotic that was effective against those organisms. Although the abscess improved, Danny's legs and left arm remained paralyzed. Type III polio virus (the type in the vaccine dose he had received) was isolated in Danny's stool, and, although some experts disagree, it appears that Danny suffers from vaccine-associated polio.

The Callahans filed a medical malpractice action against SLU, Cardinal Glennon, and American Cyanamid Company, parent company of the manufacturer of the vaccine. At the time of trial, only SLU and Cardinal Glennon remained as defendants. The Callahans' expert witnesses testified that Danny's paralysis was caused by the negligence of SLU and Cardinal Glennon in failing to treat the abscess properly when Danny was first brought to the hospital. According to the experts, the improper treatment allowed endotoxins to be released, which suppressed Danny's immune system. Because Danny's immune system was compromised, the attenuated polio virus contained in the vaccine was able to replicate fast enough to overcome his suppressed immune system, resulting in poliomyelitis. The Callahans' experts testified that if the abscess had been treated properly from the outset, the endotoxins would not have been released, his immune system would not have been suppressed, and he would not have contracted polio.

SLU and Cardinal Glennon, however, presented evidence that Danny's paralysis was not connected to the abscess and that it was caused by the attenuated polio virus in the vaccine mutating to a virulent form after it had been ingested. They presented evidence showing that in the 1980s approximately one in four hundred thousand people receiving Orimune developed polio. Their experts also testified that the Callahans' theory that endotoxins suppress the immune system

making a host more susceptible to vaccine-induced poliomyelitis was not supported by any known research.

The jury returned a $16 million verdict against SLU and Cardinal Glennon. After the trial, Cardinal Glennon entered into a settlement agreement with the Callahans. SLU appealed, and the jury's verdict was affirmed by the Missouri Supreme Court sitting en banc. *See Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (1993) (en banc).

## B. *In re Sabin*

While the *Callahan* case was winding its way through the Missouri court system, multi-district Orimune cases filed against the United States government under the Federal Tort Claims Act were transferred to the District of Maryland for resolution of the common legal and factual questions. *See In re Sabin Oral Polio Vaccine Prod. Liab. Litig.*, 774 F. Supp. 952 (D. Md. 1991); *In re Sabin Oral Polio Vaccine Prod. Liab. Litig.*, 763 F. Supp. 811 (D. Md. 1991); *In re Sabin Oral Polio Vaccine Prod. Liab. Litig.*, 743 F. Supp. 410 (D. Md. 1990).

The plaintiffs in the *In re Sabin* cases contracted polio after receiving a Type III Orimune vaccine or after coming into contact with a recipient of the Type III vaccine. They sued the government, alleging, *inter alia*, that the National Institute of Health's Division of Biologic Standards negligently issued a license to Lederle Laboratories (a subsidiary of American Cyanamid) to manufacture the vaccine and improperly approved vaccine that did not meet the "neurovirulence" standards set forth in the governing regulations. The district court ultimately concluded that the government violated the governing regulations and was negligent in approving certain vaccine "seeds" and the release of lots derived therefrom and that its negligence was a proximate cause of the injuries suffered by the plaintiffs, who received or were exposed to vaccines from lots derived from the improperly approved seeds. *See* 774 F. Supp. at 957-58; 763 F. Supp. at 821-25. The district court's *Sabin* opinions were affirmed by this Court on appeal. *See In re Sabin Oral Polio Vaccine Prod. Liab. Litig.*, 984 F.2d 124 (4th Cir. 1993) (per curiam). The Orimune vaccine received by Danny Callahan was derived from one of the vaccine seeds that

the *In re Sabin* cases concluded were improperly approved by the government.

## C. The Contribution Action

After the Missouri Supreme Court affirmed the *Callahan* verdict, SLU filed this contribution action against the United States. In its complaint, SLU alleged that Danny Callahan's polio was caused by the government's failings identified in the *In re Sabin* cases, specifically the government's approval of excessively neurovirulent vaccine seeds.

The government moved for partial summary judgment on the ground that SLU was barred by collateral estoppel from relitigating the *Callahan* jury's conclusion that SLU's malpractice caused Danny's polio. The district court granted the motion, concluding that SLU was prohibited from relitigating the following facts that the court believed the *Callahan* jury necessarily found in order to reach its verdict against SLU: (1) that SLU breached the applicable standard of care when treating Danny's abscess; (2) that Danny's immune system would not have been suppressed but for SLU's inadequate treatment of the abscess; (3) that, but for the suppressed state of Danny's immune system, the live polio virus contained in the vaccine would not have been able to replicate fast enough to cause polio; and (4) that, but for SLU's negligence, Danny would not be paralyzed.

In essence, the district court's collateral estoppel ruling prevented SLU from arguing that it was not negligent at all or that any negligence on its part did not contribute to Danny's polio, but the ruling allowed SLU to proceed on any theory consistent with the *Callahan* verdict. Thus, after the collateral estoppel order, SLU could still prevail on its contribution claim against the government if it could establish that an immunosuppressed child would not have contracted polio from a vaccine that complied with all regulatory requirements.

After the collateral estoppel ruling, the parties engaged in eighteen months of discovery. The government then moved for summary judgment on the ground that SLU could not prove that the government's negligence caused Danny's polio. The district court reviewed the evidence submitted by SLU and concluded that it was insufficient, given

the *Callahan* findings, to establish a causal connection between the government's negligence and Danny's injuries. The court explained that SLU's experts

> continue to be of the view that, the verdict in the *Callahan* case notwithstanding, Callahan's system had not been immunosuppressed. That view is central to their evaluation of the medical evidence and cannot be separated from their opinion that Callahan's paralysis was caused by the neurovirulence of the vaccine. Therefore, to permit their opinions to be admitted into evidence would undermine the collateral estoppel ruling I have made.

> . . . [N]one of SLU's experts have expressed an opinion that, if Callahan had been given a vaccine that satisfied the neurovirulence requirements of the applicable regulations, he would not have contracted polio . . . . SLU asserts that it "never tendered these witnesses as experts on neurovirulence." SLU goes on to say that "the whole purpose of their testimony was to show that Danny Callahan was a paralytic poliomyelitis case from Type III vaccine, and that immunosuppression played a de minimis role." As such, the testimony is insufficient to meet SLU's burden of proof as to causation since SLU's theory of liability against the government necessarily rests upon the implicit premise that an immunosuppressed child (as Callahan must be assumed to have been) would not have contracted polio but for the alleged excessive neurovirulence of the vaccine administered to him.

Appendix at 89-90. The district court therefore granted summary judgment to the government on SLU's contribution claim. SLU appeals, contending that the district court's collateral estoppel ruling was incorrect under Missouri law and that it produced sufficient evidence of causation to avoid summary judgment.

## II. COLLATERAL ESTOPPEL

SLU's primary argument is that under Missouri law, the *Callahan* judgment does not have collateral estoppel effect in this contribution

action. When considering the preclusive effect in federal court of a state-court judgment, federal courts must apply the law of the state rendering the judgment. *See* 28 U.S.C.A. § 1738 (West 1994); *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In rare cases, a federal court can refuse to give preclusive effect to a state-court judgment that would be given such effect under state law. However, if the judgment would not be given preclusive effect under the law of the rendering state, a federal court cannot give it preclusive effect. *See Marrese*, 470 U.S. at 382-83; *Meindl v. Genesys Pacific Tech., Inc. (In re Genesys Data Tech., Inc.)*, 204 F.3d 124, 128 (4th Cir. 2000). Accordingly, we must determine the preclusive effect that Missouri courts would give the *Callahan* judgment in a contribution action.

Under Missouri law, collateral estoppel, or issue preclusion, precludes a party from re-litigating a previously decided issue if: (1) the issue decided in the prior adjudication is identical to the issue as to which collateral estoppel is sought in the present adjudication; (2) the prior adjudication was a final judgment on the merits; (3) the party against whom collateral estoppel is to be applied was a party or in privity with a party in the prior adjudication; and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior suit. *See In re Caranchini*, 956 S.W.2d 910, 912-13 (Mo. 1997) (en banc); *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. 1979) (en banc). While *res judicata* extends to issues that could have been decided, collateral estoppel applies only to issues that "were 'necessarily and unambiguously decided.'" *Green v. Montgomery Ward & Co.*, 775 S.W.2d 162, 164 (Mo. Ct. App. 1989) (citation omitted).

The government contends that application of these rather unremarkable principles of Missouri law demonstrates the correctness of the district court's ruling. According to the government, the relevant issues in this contribution action and the *Callahan* action—SLU's responsibility for Danny Callahan's injuries—are identical; the *Callahan* verdict, which was affirmed on appeal, is clearly a final judgment; SLU was a party to the *Callahan* action; and SLU had a full and fair opportunity in that case to litigate the issue of its responsibility for Danny's injuries. The government therefore contends that the district court properly gave collateral estoppel effect to the *Callahan*

judgment. We disagree. Under Missouri law, the primary issue in a contribution action is the relative degree of fault *as between joint tortfeasors*. A judgment in the underlying action, even if both tortfeasors are defendants in that action, typically resolves only the question of each tortfeasor's liability *as to the plaintiff*; the claims of the codefendants as to each other generally are not resolved. Accordingly, under Missouri law, "a prior judgment is not conclusive in a subsequent action between co-defendants in the prior action unless the co-defendants occupied adversary positions in the prior action and *actually litigated therein the issue of their liability as between themselves as well as their liability to the injured party*." *City of St. Joseph v. Kaw Valley Tunneling, Inc.*, 660 S.W.2d 26, 32 (Mo. Ct. App. 1983) (emphasis added). In a typical case, then, a judgment against codefendants establishes

> nothing but their joint liability to the plaintiff. Which of the defendants should pay the entire debt, or what proportion each should pay in case each is partly liable, is still unadjudicated; but a judgment against two joint debtors prevents either from denying the existence and obligation of the debt, *though he may still prove by any competent evidence in his power that the whole burden of the obligation should be borne by the other.*

*Missouri Dist. Tel. Co. v. Southwestern Bell Tel. Co.*, 93 S.W.2d 19, 23 (Mo. 1936) (en banc) (emphasis added) (internal quotation marks omitted)); *see also Stifel v. Butcher*, 487 S.W.2d 24, 33 (Mo. 1972) ("[A] judgment against defendants, if there are no issues between them, do[es] not bind them as against each other.").

The same analysis applies in cases where the plaintiff did not name all joint tortfeasors as defendants. The defendant against whom a judgment has been rendered may bring a separate contribution action against other joint tortfeasors, even though those tortfeasors were not named by the plaintiff in the prior action or brought into the prior action by the named defendant, and the prior judgment is not binding in the contribution action. *See Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 732 (Mo. 1982) (en banc) (holding that "no determination adverse to the [contribution defendants'] interests is made by the original judgment," and that the contribution plaintiff,

who was the defendant held liable in the prior action, "may not recover from any [contribution defendant] more than its proportionate amount of liability based upon its relative fault, *if any*" (emphasis added)).

Here, while SLU's liability to Danny Callahan was fully and fairly litigated in the Missouri state court action, the United States government was not a party to that action, and the issue of liability as between SLU and the government simply was not litigated in that case. Certainly, SLU presented evidence in the state court action tending to show that Danny's paralysis was caused by the polio vaccine, and not any negligence on SLU's part. That, however, does not amount to a full and fair litigation of the questions central to this contribution claim—whether the government negligently approved the vaccine, whether the government's negligence was a concurring cause of Danny's injuries, and if the government's negligence did cause Danny's injuries, the extent to which the government should be responsible for the *Callahan* verdict. Thus, the issues in this contribution action are not identical to those in the state court action, and the critical issues in this case have yet to be fully and fairly litigated by the proper parties. The requirements under Missouri law for the application of collateral estoppel therefore have not been satisfied. Because Missouri courts would not give collateral estoppel effect in a contribution action to the *Callahan* judgment, the district court erred by giving collateral estoppel effect to the judgment.[1]

## III. SUMMARY JUDGMENT

The district court's summary judgment order was the result, in large part, of its prior collateral estoppel order. The court granted summary judgment against SLU after determining that SLU failed to present sufficient evidence of causation under any theory consistent with the factual assumption, compelled by its collateral estoppel ruling, that Danny Callahan would not have contracted polio but for his suppressed immune system, which was caused by SLU's negligence. As we have just concluded, however, the district court erred in giving collateral estoppel effect in this contribution action to the *Callahan*

---

[1]Our conclusion makes it unnecessary to consider SLU's other challenges to the collateral estoppel ruling.

judgment. And as we explain below, this error requires that we reverse the grant of summary judgment against SLU.

Under Missouri law, SLU cannot in a contribution action disclaim all *negligence* on its part in connection with Danny's injuries. Nonetheless, in its contribution claim against the government, SLU remains free to prove the extent which its negligence, as compared to that of the government, caused Danny's injuries. *Cf. Missouri Dist. Tel.*, 93 S.W.2d at 23 ("[A] judgment against two joint debtors prevents either from denying the existence and obligation of the debt, though he may still prove by any competent evidence in his power that the whole burden of the obligation should be borne by the other.") (internal quotation marks omitted)); *Stephenson v. McClure*, 606 S.W.2d 208, 213 (Mo. Ct. App. 1980) ("It is a well-recognized rule that one seeking contribution as a joint tortfeasor must allege that he was a joint tortfeasor."). And as an analysis of *Uelk v. Directory Distributing Associates, Inc.*, 803 S.W.2d 632 (Mo. Ct. App. 1991), will demonstrate, SLU's theories of recovery in this action cannot be limited to those consistent with the findings implicit in the *Callahan* judgment.

In *Uelk*, the plaintiff was injured when he slipped and fell in the rain on metal stairs outside a building owned by McKee, managed by West, and leased to Directory Distributing Associates ("DDA"). The plaintiff sued McKee, West, and DDA. McKee and West filed cross-claims for contribution and indemnification against DDA. DDA also filed an indemnification cross-claim, asserting that McKee was responsible under the lease for maintaining the stairs. At trial, evidence was presented establishing that the stairs were slippery when wet, and that metal stairs are even more slippery without paint. There was also evidence that DDA knew the stairs were slippery when wet and that on the day the plaintiff was injured DDA failed to follow its usual practice of posting a sign warning about the slippery stairs. *See Uelk*, 803 S.W.2d at 633-34.

The instructions to the jury allowed it to return a verdict for the plaintiff only if the jury determined that the stairs were not reasonably safe because they were "'slippery and lacked adequate paint cover.'" *Id.* at 634. The jury found all involved to be partially responsible for the plaintiff's injuries, apportioning forty percent of the fault to DDA,

thirty percent to West, ten percent to McKee, and twenty percent to the plaintiff. *See id.*

After the jury's verdict, the cross-claims were submitted to the trial court for an independent determination of liability. Without making any findings of fact to explain its ruling, the trial court granted the contribution claim of McKee and West and denied DDA's claim, thus shifting to DDA full responsibility for the jury's verdict. DDA appealed, arguing that the jury found that the stairs were not properly maintained and that the verdict should be binding in the contribution action. DDA thus argued that the trial court erred by holding it responsible for the full amount of the jury's verict. *See id.* at 634. The Missouri Court of Appeals rejected DDA's argument and affirmed.

The court explained that "the verdict of the jury in the trial on [the plaintiff's] petition was not binding on the trial court in resolving the issues presented by the counterclaims," *id.*, and that "a judgment in favor of a plaintiff ordinarily does not determine the relative rights or liabilities of codefendants unless their hostile or conflicting claims are actually brought into issue by pleadings and are litigated and determined," *id.* at 635 (internal quotations omitted). Because the trial judge was not bound by the jury's verdict when he resolved the counterclaims, the appellate court had no difficulty affirming the trial court's decision to grant the cross-claim of McKee and West:

> [T]he trial court could have found that the cause of the fall was totally [DDA's] fault due to [its] failure to warn of the slippery condition of the steps and that the steps were adequately painted. There was evidence introduced at trial that the stairs were structurally sound and that respondent West had just painted them a few months prior to the accident. *The fact that the jury discounted this evidence in its verdict for [the plaintiff] did not require the trial court to do the same in determining the merits of the counterclaims.*

*Id.* at 635 (emphasis added).

Applying these principles to the case at bar, it is clear that, even though the *Callahan* jury rejected SLU's defense and instead concluded that SLU's negligence caused Danny to contract polio, SLU

may, consistent with Missouri law, attempt to prove that its negligence was a *de minimis* cause and that the government's negligence in approving the vaccine was the primary cause of Danny's injuries. SLU is not limited to causation theories predicated on the *Callahan* jury's implicit conclusion that Danny would not have contracted polio but for SLU's negligence which resulted in the suppression of his immune system.

As the government acknowledges in its brief, the district court limited SLU during discovery to causation theories consistent with its ruling as to the collateral estoppel effect of the *Callahan* judgment, and the district court premised its order granting summary judgment on SLU's failure to present evidence of causation consistent with its collateral estoppel ruling. Given our conclusion that the district court erred by giving collateral estoppel effect to the *Callahan* judgment, we must also reverse the district court's grant of summary judgment to allow SLU an opportunity to develop other appropriate theories of causation.

Moreover, SLU alleged in its contribution complaint that the government's actions contributed to the damages suffered by Danny Callahan. SLU presented the testimony of Dr. Robert Baltimore, who stated that, in his opinion, an excessively neurovirulent vaccine would produce more severe paralysis than would a vaccine that complied with all regulatory requirements. This testimony is sufficient, without regard to the effect of the district court's collateral estoppel order, to create a question of fact as to whether the government's negligence increased the damages suffered by Danny. The district court, therefore, erred by granting summary judgment to the government.[2]

---

[2]SLU also argues that the causation question is resolved by the opinions of the district court and this court in *In re Sabin*, contending that the government stipulated that it would not relitigate in this case the issues resolved in *In re Sabin* and that the government is collaterally estopped from relitigating the *Sabin* issues. As to the former contention, we note that because no such "stipulation" by the government is included in the appendix, we are in no position to evaluate the merits of this argument. As to the latter contention, we question whether it is a correct statement of the governing law. *See United States v. Mendoza*, 464 U.S. 154, 162-63 (1984) ("[N]onmutual offensive collateral estoppel simply does not

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the district court's collateral estoppel and summary judgment orders are reversed and the action is remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

Because I would conclude that St. Louis University failed to present sufficient evidence of causation, I respectfully dissent.

---

apply against the government in such a way as to preclude relitigation of issues such as those involved in this case. The conduct of government litigation in the courts of the United States is sufficiently different from the conduct of private civil litigation . . . so that what might otherwise be economy interests underlying a broad application of collateral estoppel are outweighed by the constraints which peculiarly affect the government."). Nonetheless, given the basis of our decision today, we need not determine whether the *In re Sabin* cases have any collateral estoppel effect against the government.